(33 App. Div. 185.)

McLOUGHLIN et al. v. SINGER et al.

(Supreme Court, Appellate Division, First Department. August 10, 1898.)

TRADE LABEL—INJUNCTION.

> If a dealer in a given article adopts and uses a label so nearly identical with that of a rival as to establish, upon inspection, not only the fraudulent intention to deceive the public, but the certainty that they must be deceived thereby, a suit against him based on unfair competition may be sustained without further proof that persons have in fact been so deceived.
>
> McLaughlin, J., dissenting.

Appeal from special term, New York county.

Action by John McLoughlin and others against Jane C. Singer and another. From an order denying a motion for injunction to restrain defendants from using a copy of a colored label, plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and O'BRIEN, JJ.

A. B. Malcomson, for appellants.

L. G. Raegener, for respondents.

O'BRIEN, J. Upon the motion below, it appeared by affidavits that in 1886 the plaintiffs prepared a colored label to be used on a box containing a new game board introduced by them, and to which they gave the name of "Game of District Messenger Boy." There was a chart or board of the game, and a book of directions, which latter was sent to the librarian of congress, and duly copyrighted. Since that time, the plaintiffs have continued to manufacture and sell the game, put up in a box upon which the colored label is affixed; and, as the result of advertising, it has "obtained quite a reputation as one of plaintiffs' best games." The defendant Jasper H. Singer began to make an article, and put it up with a label on boxes containing it, some time just prior to 1897, when, having made an assignment for the benefit of creditors, the business was subsequently bought in and conducted by his wife, the other defendant, Jane C. Singer, under the superintendence of her husband. The similarity in the two labels is apparent on the barest inspection; and we do not understand that the fact that they

are similar is at all in dispute. The position taken by the defendants is stated in the affidavit of one of them in the following language:

"I am advised and believe that plaintiffs might possibly have obtained a copyright upon the design contained upon the box cover, provided the same involved any originality; but the very fact that they did not obtain a copyright for such design is an abandonment and dedication to the public of such design; and therefore I have a perfect right to copy it literally, if I see fit so to do."

This position is emphasized by the counsel for the respondents, who insists that:

"After the publication of this new game and new design, everybody had the right to publish the same game and the same picture, unless by so doing he infringed upon plaintiffs' trade-marks, provided they had any, or the sale by such other person was an unfair competition in trade."

The latter statement, of course, is a modification of the broad proposition that the defendants had a right to appropriate, not alone the game, but also the label by which it had been advertised and become known to the public. The concession, however, that unfair competition in trade may be enjoined, we think, is sufficient, with the other facts appearing, to justify the court in awarding an injunction.

We have the statement presented by one Kallenbach, who has been familiar with such matters for 30 years, that the game prepared and sold by the defendants under the name of "Messenger Boy" is inferior to the plaintiffs', and that the sale of such imitation game will greatly injure the reputation of the plaintiffs' Messenger Boy game, and result in decrease of the sale of the plaintiffs' game. Without discussing the moral standard which the defendants set up, of their right to take advantage of the plaintiffs' ideas in originating the game and advertising so as to create a demand, or their right to get some advantage from the trade and demand thus created, and to reap a profit from selling an inferior imitated article, we shall confine ourselves, assuming the defendants have such right, to the real point in this case, as to whether, upon such sale, they can also make use of a similar label to the one employed by the plaintiffs. Not only do the affidavits show, but there is no denial, that the defendants' label is an intentional imitation of the plaintiffs, and on its face has a tendency to mislead persons to mistake it for the original label on the plaintiffs' goods. This imitation or similarity of the two labels is apparent throughout. Thus, from the top to the bottom, whether we take the coloring, rainbow shape, proportion of circle at the top, or the picture of buildings in the background and a messenger boy in front, or the figure and position of the boy, and the arrangement of the border at the base, the two labels are substantially the same; and that they were not exactly the same could only be determined by close inspection. In the right-hand corner the cards have different printed matter upon them; but the branch of leaves and flowers is copied down to the very number of flowers, there being the same number on each.

It is suggested that the failure to show that persons were actually deceived is fatal to the plaintiffs' right to relief by injunction. This contention, however, is disposed of by the case of Taendsticksfabriks Aktiebolagat Vulcan v. Myers, 139 N. Y. 367, 34 N. E. 904, wherein it is said:

"No evidence is given or offered to show that any person had actually been deceived by the imitation of the plaintiff's trade-mark, and we think that none was necessary for the maintenance of the action. It is the liability to deception which the remedy may be invoked to prevent. It is sufficient if injury to the plaintiff's business is threatened or imminent to authorize the court to intervene to prevent its occurrence. The owner is not required to wait until the wrongful use of his trade-mark has been continued for such a length of time as to cause some substantial pecuniary loss."

The motion was denied in the court below, for the reason that it was thought that the label was merely descriptive of the article sold. We think that in this the learned court fell into error. It may be that the name "District Messenger Boy," separated from the label, might give some idea of what the game was about, it appearing when examined that it deals with the career of a messenger boy; but, even if this could be held to be descriptive of the game,—and we do not think it can,—what connection has it with the conceded simulation of the coloring, the rainbow half-circle at the top, the branch of flowers at the bottom, or the style and shading of the figures and letters, as relating to the description of the article? Certainly, the figure of the boy running is not descriptive, there being no contention that there is a running boy in the box, or any rainbow or bunch of flowers therein.

Equally without force is the contention that the plaintiffs are entitled to no relief because they have not shown that the label used was their trade-mark. One has the right to adopt a label in the sale of goods, and even though it does not amount, strictly speaking, to a trade-mark, this does not permit another to enter into an unfair competition with him in his business by getting up a similar article (here unquestionably inferior), and placing it in packages so alike that the public are liable to be deceived, and thus palming it off on the unwary, to the detriment of the originator. We do not think, however, that this subject requires further elaboration, it being fully covered by the decision of this court in Day v. Webster, 23 App. Div. 602, 49 N. Y. Supp. 314, in which the very question here presented as to the basis of the plaintiffs' claim, and as to the effect of failure to show that others had been deceived, was considered, and the further question also discussed as to the cases where it is necessary to produce evidence of similarity. It was therein said:

"What they claim, therefore, is, in substance, unfair competition; that is, that the defendants are fraudulently attempting to pass off their goods as the goods of the plaintiffs. The question thus is, have the plaintiffs proved this charge of fraud? In the case of a technical trade-mark to which the plaintiff shows a property right, fraud is not the essence of the claim. That property right may be infringed unintentionally as well as fraudulently, and the innocent infringement will be restrained irrespective of the question of intention. Not so, however, where the question is solely one of unfair competition. There, fraud is the essence of the claim. It is true that the similarity of the wrongdoer's label may be so great that fraud will be inferred

from a mere inspection of the respective labels. Where, however, the similarity is not so great as, upon a mere inspection, to warrant the conclusion of fraud, resort may be, and usually is, had to evidence aliunde."

In the case at bar, the similarity between the two labels, as stated, appears upon the barest inspection, and is not seriously disputed; the position of the defendants being, as shown, that having a right to manufacture the game, because it was dedicated to the public by the plaintiffs when they made it and put it upon the market without having it protected by a trade-mark, the defendants have the further right to appropriate the label adopted by the plaintiffs, and placed upon the box containing the game when ready for sale. The practice is not to grant preliminary injunctions except in very clear cases; but the present, we think, clearly falls within the exception, for little could be added upon the trial to the showing made by the plaintiffs as to the palpable imitation of their label, or to the facts showing unfair competition.

We think, therefore, that the order below was wrong, and should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs to abide the event. All concur, except McLAUGHLIN, J., dissenting.

BARRETT, J. I agree with Mr. Justice McLAUGHLIN that ordinarily it must be shown in this class of cases—that is, in cases of unfair competition—that the resemblance of the labels is not only calculated to, but does in fact, deceive. The defendants' label here, however, is not merely calculated to—it cannot fail— to deceive. The resemblance to the plaintiffs' label is too striking to call for proof of actual deception. The defendants' label is, in fact, ostentatiously similar to the plaintiffs', and flagrantly fraudulent. Indeed, there is no attempt to defend it except upon the ground that the defendants have a legal right to sell this particular game, and to use this particular device, whether such sale and use effect deception or not. Thus, the bare inspection of these labels proves the plaintiffs' case, and entitles them to a decree. I therefore concur with Mr. Justice O'BRIEN.

McLAUGHLIN, J. (dissenting). The plaintiffs' right to maintain this action is based on the theory that the use of the label by defendants is an unfair and dishonest competition in trade on their part. In other words, the plaintiffs in effect claim that the defendants, by the use of the label, are fraudulently attempting to sell their goods as the goods of the plaintiffs. To entitle the plaintiffs to recover, they must not only allege in their complaint, but they must prove upon the trial, that the resemblance of the labels is not only calculated to, but that the same does in fact, deceive the ordinary buyer. This is precisely what the court of appeals declared, in Fischer v. Blank, 138 N. Y. 252, 33 N. E. 1040, was necessary to be established to entitle a plaintiff to recover in an action of this character. Judge Maynard, in delivering the opinion of the court in that case, in which all of the judges concurred, said:

"The true test, we think, is whether the resemblance is such that it is calculated to deceive, and does in fact deceive, the ordinary buyer making his purchase under the ordinary conditions which prevail in the conduct of the particular traffic to which the controversy relates."

In the case now before us no proof whatever was presented to the special term that any one had in fact been deceived by the defendants' use of the label, and we have no right, in the absence of proof, to infer that they will be.

For this reason, the learned justice at special term was right in denying the motion.