### YALE UNIVERSITY PRESS v. ROW, PETERSON & CO.

District Court, S. D. New York.

April 18, 1930.

against the defendants within the jurisdiction of this court and this district.

Under the Copyright Law, title 17, U. S. C. § 5(a) (17 USCA § 5(a), it is provided that *"books, including composite and cyclopedic works, directories, gazetteers, and other compilations,"* may be the subject of copyright.

The Copyright Law, title 17, U. S. C. § 62 (17 USCA § 62), provides in its definition of terms that *"the word 'author' shall include an employer in the case of works made for hire."*

■ The basis of plaintiff's title to copyright set forth herein is that the plaintiff, as the employer of the compilers of a pictorial history of the United States known as "The Pageant of America," caused the same to be copyrighted in its own name, in pursuance of the copyright laws of the United States. In substantiation whereof, the plaintiff makes profert of, and has filed in this motion, the certificates' of copyright of the volumes of "The Pageant of America" already issued.

The copyright ability of a composite work of this kind has been frequently recognized by the courts. Cf. Jewelers' Circular Pub. Co. v. Keystone Pub. Co., 281 F. 83, 26 A. L. R. 571 (C. C. A. 2); American Code Co., Inc., v. Bensinger et al., 282 F. 829 (C. C. A. 2); Da Prato Statuary Co. v. Giuliani Statuary Co. (C. C.) 189 F. 90; National Cloak & Suit Co. v. Kaufman (C. C.) 189 F. 215.

The defendant is charged by the plaintiff with two types of copyright infringement:

(1) Piracy by copying illustrations and text which are the plaintiff's original creations, and which have been copyrighted by the defendant as component parts of its copyright books.

(2) Piracy by directly copying illustrations which the plaintiff did not originate, but which it collected and published in a copyrighted compilation.

Comments on the first type of infringement alleged are unnecessary.

■ The second type of infringement is commonly called "unfair use," and was dealt with very fully by the Circuit Court of Appeals for this Circuit in Jewelers' Circular Pub. Co. v. Keystone Pub. Co., 281 F. 83, 88–93, 2 A. L. R. 571.

Judge Rogers in that case said, at page 88 of 281 F.:

"The right to copyright a book upon which one has expended labor in its preparation does not depend upon whether the materials which he has collected consist or not

Satterlee & Canfield, of New York City (Randolph Hicks and Lloyd F. Thanhouser, both of New York City, of counsel), for plaintiff.

Kenyon & Kenyon, of New York City, and Fisher, Clapp, Soans & Pond, of Chicago, Ill. (C. A. Soans, of Chicago, Ill., of counsel), for defendant.

WOOLSEY, District Judge.

The motion to dismiss the complaint herein is in all respects denied.

The motion for a preliminary injunction, of the scope hereinafter outlined, will be granted, unless the defendants' comply with the conditions hereinafter laid down.

I. I think there is not any question but that the complaint states a cause of action

of matters which are publici juris, or whether such materials show literary skill or originality, either in thought or in language, or anything more than industrious collection. The man who goes through the streets of a town and puts down the names of each of the inhabitants, with their occupations and their street number, acquires material of which he is the author. He produces by his labor a meritorious composition, in which he may obtain a copyright, and thus obtain the exclusive right of multiplying copies of his work."

Weil in the Law of Copyright says, § 629, at page 234:

"As long as the author of the second work has not copied his predecessor's work, as distinguished from copying their common material, his predecessor cannot complain because the former has achieved the same, or an essentially similar, result. He cannot complain even though his work, by indicating the common sources, has facilitated, or led to, consultation of those by his successor. The scope of copyright in such works, which is discussed elsewhere, is then limited so as simply to prevent a subsequent laborer in the same vineyard from seeking to save time or trouble by copying his predecessor's work."

■ II. I have given the most careful consideration to the voluminous papers in this interesting case.

The plaintiff's "The Pageant of America" is said to contain about 9,000 illustrations. The defendant's two books—"The Growth of a Nation" and "The Story of our Nation"—are said to contain about 520 illustrations.

Plaintiff claims that of these 520 illustrations 154 are directly copied from "The Pageant of America."

The defendant admits copying four pictures from "The Pageant of America" which were original to that book, namely, "Building of Jamestown," "Colonial Plowing," "Colonial Lighting Devices," and "Bench Shoemaker."

In addition, the defendant is unable to give its sources for 40 more of the 154 pictures claimed by the plaintiff to have infringed its copyright, and, apparently, is unable to deny that these were directly copied from the plaintiff's "The Pageant of America," direct.

I do not agree with the plaintiff's contention that the substance of the headings of the illustrations in the defendant's books, mentioned by Mr. Brooks, infringe the plaintiff's headings. They are not direct copies of the plaintiff's headings, and the descriptive headings of illustrations in a pictorial history of America must necessarily be much like the description of the pictures in school books giving the same history.

I think, therefore, that the plaintiff has not made out a case for an injunction in respect of the headings of the pictures, but that, in respect of the 44 illustrations above referred to, it has made out a very strong prima facie case which has not been met by the defendant.

The list of defendant's illustrations contained in the affidavit of Arthur H. Brooks has been carefully compared with the illustrations in "The Pageant of America." The similarities are in many cases remarkable, but, with the exception of the 44 pictures above referred to, I shall leave the question as to whether they were directly copied from the plaintiff's illustrations or independently secured from a common source to be determined at the trial on plenary proofs.

It appears, however, from the affidavit of Mr. Jones, for the defendant, and is not denied by the plaintiff, that "The Growth of a Nation" was published on or about July 1, 1928. This was prior to the publication of volumes 9, 7, and 10 of "The Pageant of America," which were published as stated in the complaint as follows: Volume 9 on October 22, 1928; volume 7 on October 27, 1928; and volume 10 on October 27, 1928.

It is obvious, therefore, that pictures in "The Growth of a Nation" could not have been copied from any of the pictures in the three volumes of "The Pageant of America" just mentioned, and any injunction granted should not cover any illustrations in "The Growth of a Nation" alleged to have been copied from volumes 9, 7, and 10 of "The Pageant of America."

■ III. In determining the interlocutory remedy which properly should be given to work out justice between the parties in a case of this kind, I think a court must consider the situation of both parties, and, if the situation warrants so doing, without undue prejudice to the plaintiff, that the option should be given to the defendant of escaping the drastic remedy of a preliminary injunction by giving a bond adequate to protect the rights of the plaintiff pending final determination of the litigation.

■ Here the situation is that the plaintiff's books are quite expensive and constitute a kind of illustrated encyclopedia for reference purposes. The defendant's books, which infringe, are school text-books. The defend-

ant's books are not, therefore, in any real sense in direct competition with the plaintiff's books.

It is claimed by the defendant, and not denied by the plaintiff, that, long before the question of any copyright infringement arose, the defendant entered into contracts with the states of Texas and Alabama to furnish the infringing books to the schools of those states.

It is obvious that an injunction would seriously affect, and might prevent, the performance of those contracts by the defendant, because it would require the recasting of the defendant's books to a large extent, and prevent their delivery under the contracts until they had been so recast.

It seems to me, having regard to the situation of both parties as above outlined, that an injunction to the full extent, which would be justified by the showing made by the plaintiff here, would probably work irreparable injury to the defendant owing to the public contracts above mentioned. Furthermore, it must be always borne in mind that the plenary proofs at a trial may explain matters not made clear by the defendant's affidavits.

I think that the plaintiff here will be sufficiently protected by my ordering the defendant to give a bond and make monthly accounts of sales pending the final adjudication of this case. Cf. Trow Directory, etc., v. Boyd (C. C.) 97 F. 586–588.

The plaintiff may therefore have an order directing:

(1) That the defendant shall on or before the 15th day of May, 1930, file a bond, with approved surety, in an amount to be agreed on by the parties or fixed by the court, providing (a) that the defendant shall respond in damages or profits to which the plaintiff may on final adjudication herein be held entitled, and (b) that the defendant shall file with the plaintiff, not later than the 15th day of each month, a sworn statement of the sales of the alleged infringing books during the prior calendar month, giving the name and address of each purchaser, the amount paid to the defendant by such purchasers, and the profit realized from each sale; and

(2) That in case of failure to file such a bond by May 15, 1930, or to file the statements above mentioned on the 15th day of each month thereafter until the final adjudication herein, a preliminary injunction may issue against the defendant restraining it pendente lite from continuing the publica-

tion and sale of "The Growth of a Nation" and "The Story of our Nation," until it shall have removed therefrom the 44 illustrations above referred to, which illustrations must, of course, be listed in the order submitted herein.

Settle order on five days' notice.