**HARTFIELD v. PETERSON et al.**
No. 414.

Circuit Court of Appeals, Second Circuit.
July 19, 1937.

Fritz Ziegler, of New York City, for appellants.

Seligsberg & Lewis, of New York City (William E. Friedman and W. N. Seligsberg, both of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit for infringement of a copyrighted cable and telegraphic code prepared by the complainant, Hartfield, of which he obtained the copyright in 1912. The defendant Peterson compiled a code copyrighted in 1929 known as "Peterson's International Code 3rd Edition" which was published and sold by Peterson Cipher Code Corporation, of which Peterson was the president. Judge Coxe held upon the trial in the District Court that the defendants infringed Hartfield's copyright and awarded a decree in his favor for $5,000 statutory damages, $2,000 counsel fees, and court costs which were taxed at $60.98. From this decree the defendants have appealed on the ground that the complainant made no sufficient proof of infringement.

Judge Coxe found that the defendants' 1929 code was to a substantial extent copied from the 1912 code of Hartfield. He reached this conclusion not only because of a large number of substantially identical phrases that are in the two codes and certain sequences of phrases which he thought significant but also on account of a considerable number of common errors.

If we disregard certain special phrases peculiar to each code, there still remain in the Peterson code 47,397 and in the Hartfield code 74,962 phrases, of which about 9,923 are common to both. Thus it is evident that about 21 per cent. of the phrases in Peterson's code have either been copied from Hartfield's earlier publication or have been derived by each from common sources.

Peterson testified that he took nothing from Hartfield's 1912 code and had never examined it, though, after stating in answer to interrogatories that he had never seen that code, he was finally forced to admit at the trial that he had purchased a copy in 1918. He insisted throughout that all the phrases contained in his 1929 code were supplied by his customers from codes of the American Express Company, Guaranty Trust Company, Irving Trust Company, from private codes loaned to him, and from information collected by circularization, and that the general basis for his 1929 code was his 1927 code made for the Guaranty Trust Company, which in turn was largely derived from that of Irving Trust Company. It is argued by his counsel that code compilers do not originate or compose code phrases, but merely collect them from existing sources and alphabetically arrange them under appropriate headings. This, at least to a large extent, may be true, but, even if entirely true, it would afford no justification to Peterson for copying an arrangement or sequence of phrases which was the work of Hartfield. The right protected by Hartfield's copyright was not to the use of the words found in the phrases, but to the "arrangements * * * which the author selected to express his ideas." Holmes v. Hurst, 174 U.S. 82, 86, 19 S.Ct. 606, 43 L.Ed. 904. Both the phrases, so far as they were his, and the arrangement were proper subjects of copyright. While the commercial right of Peterson to the use of the words and the currency of many of the phrases make proof of infringement of such a work as a business code more difficult than in case of literary publications, yet these things go only to the proof and to the likelihood of any copying by Peterson of any substantial part of the compilation.

Hartfield admitted at the trial that he could not specify any phrase in his code which he had himself originated. But he evidently originated and introduced into his code various phrases and arranged the sequence and form of the text. The following is his story of how he carried out the composition:

"I had a great mass of material accumulated from years past, different codes, and gleanings of suggestions made by different people and so forth. I took those and made notes of them on sheets of paper, writing phrases on sheets of paper. As I wrote phrases, other phrases suggested themselves and I interpolated those. I read the phrases and as I read them, other phrases suggested themselves, and I wrote those. Then I rewrote them into alphabetical sequence, and as I rewrote them into alphabetical sequence, other phrases suggested themselves, and those I interpolated. Then I went through this different data I had and made further additions, kept on enlarging various subjects. Some people suggested to me that the subjects in my 1905 book were

1000

not adequate and should be improved upon. These subjects I enlarged, amplified."

■ In the foregoing statement Hartfield gave a description that seems to ring true of the work that a man experienced in making cable and telegraphic codes would be likely to do. He admitted that he included in his 1912 code all the phrases he had used in an earlier 1905 publication, but he added thousands of others obtained and arranged in the way described above. By section 6, chapter 320, 35 Statutes at L., page 1077 (17 U.S.C.A. § 6), provision is made for copyrighting: "compilations or abridgements, adaptations, arrangements * * * or other versions of works in the public domain * .* * or works republished with new matter." Hartfield's testimony as well as the presumptive validity which accompanies the issue of a copyright established that he was the author of such a compilation as might properly be copyrighted under the above section. Nutt v. National Institute Inc. for Imp. of Memory, 31 F.(2d) 236 (C.C.A.2). It is hard to see how a code could be compiled or an improved code issued without doing it in much the way he described. If an author cannot secure protection for his compilation against the copying of any substantial part of it, his copyright is worth little. We understand that the validity of Hartfield's 1912 copyright is not questioned.

Judge Coxe's itemization of numerous examples of sequences of phrases, singularities and mistakes in phrases and punctuation found in Hartfield's 1912 code and their subsequent repetition by Peterson, when taken with the latter's denial that he had ever seen Hartfield's 1912 code and subsequent retraction, satisfy us that there was access to and a copying of a substantial part of Hartfield's prior work. Peterson's appropriation, when engaged in preparing a code for Speyer & Co. of parts of an earlier uncopyrighted code compiled by Hartfield for Speyer and his copying for his 1929 code of materials taken from a code copyrighted by the American Code Company, indicate that he did not hesitate to avail himself of the work of competitors when it suited his purpose.

■ It may be argued that complainant ought to show in detail whence he derived his phrases and to prove that those which he claims the defendant has copied were not derived from common sources. But Hartfield has brought to our attention phrases, sequences, singularities and errors which appear in his 1912 code and, so far as the record indicates, have appeared nowhere else, and has shown that they have been reproduced in Peterson's 1929 publication. This shows an infringement not only of these passages as a part of Hartfield's code but of Hartfield's compilation as a whole which cannot be invaded by the appropriation of any material part of it. It must be borne in mind that the compilation is the sum total of the words and phrases as arranged by the author and that the copyright is valid because of the originality of the combination. When the statute allows a compilation to be copyrighted, it seems clear that no one can copy phrases or sequences which are original with the author or appropriate any other part of the copyrighted work, whether that part is in the public domain or not. As we said in Sheldon v. Metro-Goldwyn Pictures Corporation, 81 F. (2d) 49, 54:

"If the copyrighted work is therefore original, the public demesne is important only on the issue of infringement; that is, so far as it may break the force of the inference to be drawn from likenesses between the work and the putative piracy. If the defendant has had access to other material which would have served him as well, his disclaimer becomes more plausible."

■ The defendant here could not copy any substantial part of the arrangement or expression of Hartfield's combination and, because we think there is good reason to believe that he did, we agree with the conclusion of the court below. As we have already said, it does not make the slightest difference where Hartfield obtained his material, if defendant copied it. Hartfield published a code, parts of which were assembled and arranged by his labor, and obtained a valid copyright. If it were demonstrated that any portions which Peterson copied were taken by Hartfield from prior sources available to both parties, the former would still be an infringer. That such prior sources were shown to exist could have no bearing except on the question whether Peterson copied from these sources rather than from Hartfield's code. Peterson offered no explanation of how sequences, singularities and errors in Hartfield's code came to be reproduced in his own work except his unverified assertions that he never used Hartfield's code and that he must have taken those items from his own prior code or from other codes, or from telegrams,

or from information given him by customers.

The appellants further contend that the award of $5,000 fixed by the District Court as statutory damages is too high. But we have no power to deal with such an objection when we find the copyright valid and infringed. The power to allow such damages in lieu of actual damages is, so far as it is exercised within the limits of the statute, a matter wholly for the trial court which we have no right to review. Douglas v. Cunningham, 294 U.S. 207, 55 S.Ct. 365, 79 L.Ed. 862. The allowance of $2,000 to complainant's attorneys as a counsel fee we have power to review, but that sum cannot be regarded as unreasonable in view of the large sales by the defendants of the infringing code, the time consumed by complainant's counsel upon the case, and the further fact that defendants' own attorneys have asked for a counsel fee of $5,000 in the event they should prevail.

The decree is affirmed, with costs, and a counsel fee of $750 is awarded to complainant's attorneys for services upon this appeal.