**KRAFT v. COHEN et al.**

No. 494.

District Court, E. D. Pennsylvania.

March 6, 1940.

822

Harry Langsam, of Philadelphia, Pa., for plaintiff.

Henry N. Paul, Jr., and John H. Austin, both of Philadelphia, Pa., for defendants.

KALODNER, District Judge.

This is a copyright infringement suit, tried before me without a jury. Plaintiff seeks an injunction, statutory damages and damages under the Common Law.

Plaintiff is engaged in the business of printing and distributing bound books containing illustrations depicting clothing in various styles and of various sorts, including clerical vestures. The plaintiff does not sell clothing. He derives his income by selling his books to firms which do sell clothing. The books are used by the clothing firms to show to prospective customers, and, therefore, constitute media whereby the clothing firms can show styles of garments to such prospective customers without displaying the garments themselves.

The defendants are outfitters specializing in clerical vestments. As an adjunct to their business, they issue catalogues illustrating their merchandise, including the vestments.

In March, 1938, one Brady, an employee of the plaintiff, called on Cohen, one of the defendant firm. Brady had with him five photographs, picturing men wearing clerical vestments. These photographs had been made from original drawings composed by the plaintiff. The drawings were left with Cohen. The purpose for which they were left is disputed between the parties, as I shall presently explain.

On or about the 6th day of September, 1938, the defendants issued a printed catalogue called "National Vestments for Clergy and Choir". The book contained pictures of men dressed in various styles of the clothing, and among the illustrations were the five represented by the photographs left by Brady with Cohen.

On April 15, 1938, the plaintiff published a book which it entitled "Newest Style Portfolio, Autumn 1938–1939, Winter". On this book a copyright application was filed on May 17, 1938, and the copyright registration was issued thereon on May 17, 1938.

On May 10, 1938, plaintiff published a book entitled "Special Clerical Brochure Featuring Authentic Apparel for Clergymen." A copyright application was filed thereon on January 25, 1939, and a copyright registration issued thereon January 26, 1939.

The Portfolio contained two, and the Brochure the other three, of the pictures represented by the figures left with Cohen by Brady, all of which pictures also appeared in the defendants' catalogue above mentioned. This appearance of these pictures in the defendants' catalogue constitutes the defendants' alleged copyright infringement.

There is a sharp and outright contradiction between the plaintiff's testimony and the defendant's as to the circumstances under and the purposes for which Brady left the photographs with Cohen. Brady, as a witness for the plaintiff, testified that he went to Cohen to get an order for the plain-

tiff's prospective publications: that he went to Cohen just as he went to any other prospective customer: that there was some conversation concerning some changes in the faces or facial expressions in the figures in the photographs, and that the photographs were left with Cohen so that the latter might indicate such changes as he desired. Brady further stated that it was quite usual to accept recommendations for changes from prospective customers since if a customer was dissatisfied with the illustrations in the plaintiff's publications, there would naturally be no sale.

Cohen's story for the defendants is quite different. He stated that he was an authority on clerical vestments, and that he often received and answered inquiries concerning them; that Brady's visit to him was for the purpose of making such inquiry, and not at all for the purpose of seeking an order from a customer; that he, Cohen, kept the photographs until he had time to make some changes on them; and that upon a subsequent visit, Brady specifically gave him, Cohen, license, authority and permission to use the photographs in the defendants' catalogue without remuneration, and as a return courtesy for the suggested changes indicated by Cohen.

■ These conflicting statements cannot be reconciled, and it is necessary to accept one or the other. I accept the plaintiff's version and reject the defendants'. The probabilities are with the plaintiff. Cohen testified that he made no changes in the picturization of the clerical clothing, but only in the facial expressions; hence, his authoritative knowledge of vestments loses its significance. Kraft, one of the plaintiffs, is an artist, and could have altered facial expressions himself. It appears from Kraft's testimony that he did not know the defendant firm or its reputation as a source of information when Brady went to visit Cohen. Moreover, that the plaintiff would permit, without compensation, the use of the drawings, when its entire income is derived from such use, seems to me improbable.

The next defense presented by the defendants is the invalidity of the plaintiff's copyrights on the Portfolio and Brochure.

■ As to the Portfolio, the defense must be sustained. The Copyright Act, 35 St.1079, 17 U.S.C.A. § 19, provides that the copyright notice must appear upon the title page or the page immediately following.

The title page of the Portfolio is the outside of its cover, whereon printed matter appears such as ordinarily constitutes a title page; and no other printed leaf which could constitute a title page appears in the Portfolio.

■ The requisite copyright notice appears upon the first leaf in the book immediately following the cover. It does not appear on the inside of the cover, which would correspond to the reverse side of the ordinary title page. "Page—one side of a leaf of a book, manuscript, ledger, etc."; 46 C.J. 1168; Webster's New International Dictionary. Books consist, generally speaking, of leaves bound within covers, and each side of a leaf constitutes a page. In order, therefore, that there be compliance with Section 19 of the Act, the copyright notice must appear on the left hand side of a leaf if the matter comprised in the title page is on the right hand side; if the title page material be printed on the left hand side of the leaf, then the copyright notice must be on the right hand side of the leaf immediately following. This is not the case in the Portfolio under discussion. The copyright notice appears on the first *leaf* following the cover; but this does not meet the requirements of the statute, since a page intervenes between the title page and the page bearing the copyright notice.

■ Notice on any other page than that indicated by the statute is ineffective, no matter how prominent; and courts may not dispense with this requirement: Richards v. New York Post, D.C., 23 F.Supp. 619. The charge of infringement, therefore, so far as the Portfolio is concerned, must be dismissed.

■ It is otherwise, however, with regard to the Brochure. The copyright notice appeared on the title page and therefore meets the requirements of Section 19.

■ It is true that some copies of the Brochure were first printed off with the copyright notice on the back cover and none elsewhere. Such notice is insufficient: Bessett v. Germain, D.C., 18 F.Supp. 249. Kraft testified, however, that this mistake was discovered and rectified, and offered in evidence a copy of the Brochure with the correct copyright notice appearing on the front page. He also testified that to his knowledge none of the incorrectly printed copies had been distributed by the plaintiff. The printer's testimony (on behalf of defendants) to the effect that there were phys-

ical evidences showing that the copyright notices had been stamped, and not printed, upon the front page (with the inference that this was done after the entire lot had been run off by the printer) has no special significance, since it does not amount to proof that any of the Brochures were distributed before the notice was stamped on the front page.

■ Cohen's testimony that he received by mail a copy of the Brochure with a defective notice (printed only on the back cover) is insufficient to prevent the entry of a decree against defendants. "It is not enough to show that the picture was without the statutory notice when it came into the defendant's possession; it must appear that it left the plaintiff's possession in that condition": Gerlach-Barklow Co. v. Morris & Bendien, 2 Cir., 23 F.2d 159, 162.

Copyrights are saved from invalidation through accidental omission of the notice from some copies by Section 20 of the Statute, 17 U.S.C.A. § 20: "Where the copyright proprietor has sought to comply with the provisions of this title with respect to notice, the omission by accident or mistake of the prescribed notice from a particular copy or copies shall not invalidate the copyright or prevent recovery for infringement against any person who, after actual notice of the copyright, begins an undertaking to infringe it, but shall prevent the recovery of damages against an innocent infringer who has been misled by the omission of the notice; and in a suit for infringement no permanent injunction shall be had unless the copyright proprietor shall reimburse to the innocent infringer his reasonable outlay innocently incurred if the court, in its discretion, shall so direct." Mar. 4, 1909, c. 320, Sec. 20, 35 Stat. 1080.

The defect in the first few copies of the Brochure, therefore, does not invalidate the copyright thereon. In order, however, to determine the effect of the omission in the present suit, it becomes necessary at this point to make some review of the facts.

■ Cohen received the photographs in March, 1938; he kept them awhile, made some notations of changes on them, sent them to his printer for reproduction in his catalogue, and then upon request returned them to the plaintiff. Defendants' catalogue appeared in September, 1938. The plaintiff's Brochure was published in May, 1938 (prior to defendants' publication), and copyright registration issued thereon in January, 1939 (after the publication of defendants' catalogue). Even if it is to be assumed, however, that the defendants did not see the Brochure when it was published, and did not know that the drawings represented by the photographs had appeared or were to appear in a copyrighted publication, such ignorance or lack of animus furandi is no defense to the charge of copyright infringement: 13 C.J. 1121, 1122, and cases there cited. Moreover, the defendants' claim of the grant of a license (I have rejected this testimony) refutes any suggestion of "honest intention".

I conclude, therefore, that the plaintiff has a valid copyright on his Brochure and its contents; that the defendants have infringed plaintiff's copyright by including the drawings of clerical vestments in their catalogue; and that the accidental omission of the prescribed notice in the correct place from some copies of the Brochure does not invalidate the copyright. The question still remains whether under Section 20 recovery for the infringement should be permitted.

That Section makes provision for two sorts of infringement; it provides that the accidental omission of the statutory notice from some copies (a) shall not prevent recovery against one who infringes after actual notice of the copyright, but (b) that such omission shall prevent the recovery of damages against an innocent infringer who has been misled by the omission of the notice.

The defendants fall into neither category. Cohen testified, without contradiction, that he received through the mails a copy of the Brochure with the defective notice on the back cover *after* publication of his own catalogue. He did not, therefore, infringe after actual notice of the copyright, so far as the evidence goes. On the other hand, he is not "an innocent infringer who has been misled by the omission of the notice". The notice was not actually omitted: it was misplaced. At all events, having received the Brochure with the defective notice *after* his own catalogue was published, he could not have been misled by an "omission". His status, therefore, is (taking for the moment the view most favorable to the defendants) that of one who multiplies copies of copyrighted material without notice of the copyright. As such, his ignorance of the copyright is no defense, as already stated. Even if the defendants had received the defective Brochure prior to,

the publication of their catalogue, they could not have been misled: because the Brochure did contain a copyright notice, even though the notice was improperly situated.

The third defense is estoppel. There is testimony that the photographs left by Brady with Cohen were returned to the plaintiff prior to the publication of defendants' catalogue, with such notations and markings upon them (the photographs) as to indicate that the defendants contemplated using them in a printed publication; and Kraft himself testified that "he figured that half-tones had been made of" the photographs, and that it was fairly apparent to him that they had been used by the defendants "for some purpose". Kraft, however, did not remonstrate or communicate with the defendants in any way until after they had published their catalogue containing the infringing figures.

The defendants, therefore, contend that this testimony shows that the plaintiff knew the photographs were being reproduced by the defendants, and that his silence until after the publication of the defendants' catalogue (at which time the plaintiff, through his attorney, did write a letter of protest) amounts to such an acquiescence as estops the plaintiff from being granted any relief against defendants.

█ I cannot subscribe to this view of the Law. In my opinion the testimony is not sufficiently strong to show that Kraft *knew* that the defendants actually had reproduced or were reproducing the photographs. Suspicion is not knowledge: and without knowledge on Kraft's part, the argument anent acquiescence falls. Moreover, it is by no means every instance of acquiescence that results in an estoppel. "The intentional use of another's trademark is a fraud; and when the excuse is that the owner permitted such use, that excuse is disposed of by affirmative action to put a stop to it. Persistence, then, in the use is not innocent, and the wrong is a continuing one, demanding restraint by judicial interposition when properly invoked. Mere delay or acquiescence cannot defeat the remedy by injunction in support of the legal right, unless it has been continued so long, and under such circumstances, as to defeat the right itself": Menendez v. Holt, 128 U.S. 514, 523, 9 S.Ct. 143, 145, 32 L.Ed. 526.

In the case at bar, it is evident that any alleged delay or acquiescence had not been "continued so long and under such circumstances as to defeat the right itself". The case cited involved a trade mark, but the same principles are applicable to copyright matters: Gilmore v. Anderson, C.C., 38 F. 846 (a copyright infringement case relying on Menendez v. Holt, supra); 13 C.J. 1170, Section 348. Moreover, the defendants persisted in the publication after Kraft's attorney wrote them under date of September 19, 1938, to refrain, and any defense of acquiescence available prior to that date would not be available subsequent thereto: Menendez v. Holt, supra.

█ What has been said disposes of statutory infringement. The complaint also seeks to recover damages for violation of common law rights in the subject matter; but the plaintiff is not entitled thereto. Both the Portfolio and Brochure had been published prior to the date of publication of defendants' catalogue. Common law rights exist only until, and are lost by, publication: Caliga v. Inter-Ocean Newspaper, 215 U.S. 182, 30 S.Ct. 38, 54 L.Ed. 150; Amdur, Copyright Law and Practice (1936) page 351.

The plaintiff is entitled to an injunction against further infringement and to damages under the provisions of the Copyright Statute, 17 U.S.C.A. § 25.

It was stipulated by the parties that not less than 5,000 copies of the defendants' catalogue were printed and published, of which not less than 2,000 remained in defendants' possession.

There was no proof of damage, and no accounting of defendants' profits; the plaintiff is not for that reason, however, debarred from recovering damages.

█ While the statute fixes as damages the sum of $1 for every infringing copy, the provision is permissive merely, and the amount of damages under the circumstances of this case are left to the discretion of the Court. Damages should not be assessed upon the basis of a penalty.

█ I am of the opinion that an award of $1 per copy for 5,000 copies would be excessive.

The defendants, of course, did not sell their catalogue, but used it as something in the nature of an advertising medium for their merchandise. It would, therefore, be difficult, if not impossible, to estimate the profit accruing to the defendants from their infringement. On the other hand, it is equally difficult to know what actual dam-

826

ages the plaintiff suffered. His damages, in the legal sense, would probably equal the profits accruing to the defendants from the infringement. I consider it improbable that the profits, or damages, or both, would exceed the sum of $750 and I therefore award damages in the sum of $750.

Plaintiff is also entitled to costs and a reasonable attorney's fee. The latter of the two items I fix at $300 and make an award in that sum therefor.

There is no need for reference to a Special Master to ascertain damages.

For the legal principles stated in the foregoing discussion of damages and attorney's fee, see the cases collected in Note 180 under 17 U.S.C.A. § 25.

Let requests for findings of fact and conclusions of law, and a form of decree, be submitted.