### R. R. DONNELLEY & SONS CO. v. HABER et al.

Civil No. 807.

District Court, E. D. New York.

Feb. 14, 1942.

Rogers, Hoge & Hills, of New York City (Leslie D. Taggart, of New York City, of counsel), for plaintiff.

David R. Haber, of New York City (Anthony F. Correri, of New York City, of counsel), for defendant.

CAMPBELL, District Judge.

This is an action brought by the plaintiff for the alleged infringement by the defendant of a copyright of the plaintiff and for alleged unfair competition by the defendant.

Plaintiff, in the preparation of catalogs including the John Simmons Co. catalog in question, not only sought information from jobber and manufacturers, and consents to publish, but had obtained the same, and had edited them and produced its units, which were kept up-to-date, from which were selected those to be used, and provided new matter, and new plates for the particular business of the John Simmons Co., for which the catalog was being prepared.

All of this work, including the arrangement, required skill on the part of the plaintiff, its agents or servants, and the catalog was prepared at a considerable expense, a copy submitted to the John Simmons Co., and on approval, after revisions, was printed, bound, published and copyrighted.

Defendant questions the right of the plaintiff to copyright the catalog (Ex. 1) but he is clearly in error.

Title 17, Section 8, U.S.C.A., in so far as it is necessary for consideration herein provides as follows: "Section [§] 8. Authors or proprietors, entitled; aliens. The author or proprietor of any work made the subject of copyright by this title * * * shall have copyright for such work under the conditions and for the terms specified in this title."

The plaintiff was the author of the catalog and John Simmons Co. was not.

The defendant is in error, and is not supported by the evidence, when he says that "the employees of John Simmons Co. revised and edited all material submitted to it"; that John Simmons Co. employed plaintiff to obtain "10% of the material" in plaintiff's catalog.

The revising, editing and compiling was done by plaintiff, and there is no evidence to show that John Simmons Co. employed plaintiff to obtain "10% of the material" in plaintiff's catalog, or any other percentage, on the contrary, what plaintiff agreed to, and did supply, and what John Simmons Co. agreed to, and did accept, and pay for, was a complete catalog.

I know of no requirement, nor has any been called to my attention, that plaintiff's right to copyright the catalog should have been expressed in the contract.

The record shows that John Simmons Co. recognized the plaintiff as the author and compiler of the catalog, and that plaintiff was entitled to copyright it and did so.

Defendant's catalog was made by defendant, who says he selected the catalog material, which he pasted on prepared sheets, on which there was a border, and that when completed, he turned the copy over to the Polygraphic Co., which reproduced, without type-setting, by a photographic process, 3,000 copies for which he paid, some of which he distributed, and some of which he destroyed.

All of this was done after defendant had obtained copies of the John Simmons Co. catalog in question.

Defendant says that the information on the copy he sent to the Polygraphic Co. he obtained from jobbers, and occasionally from manufacturers in the form of cuts or photographs. He says he remembers writing to jobbers, but does not remember writing to manufacturers. He did not produce any witness, who was a jobber or manufacturer, to substantiate his story. I believe him to be in error. The results of a detailed examination of the plaintiff's John Simmons Co. catalog (Ex. 1), and defendant's catalog (Ex. 2), convinces me that the defendant's catalog is very largely a photographic copy of plaintiff's John Simmons Co. catalog (Ex. 1).

A comparison of plaintiff's catalog (Ex. 1) and defendant's catalog (Ex. 2), with the aid of Exhibit 7, shows as follows:

There are 152 pages in the defendant's said catalog.

121 of these show photographic reproductions from plaintiff's catalog.

107 of these pages consist entirely of photographic reproductions from plaintiff's said catalog.

The remaining 14 of those 121 pages consist, in part, of photographic reproductions from plaintiff's said catalog.

Defendant's said catalog consists of photographic reproductions without any change of 637 individual units from plaintiff's said catalog.

Defendant's said catalog contains photographic reproductions of 22 units from

458

plaintiff's said catalog with certain changes indicated in said Exhibit 7.

68 units which appear in defendant's said catalog, were made up new for the plaintiff's said catalog, and had not been published elsewhere prior to the photographic reproductions in defendant's said catalog.

19 units which were revised by plaintiff, specifically for its said catalog, and had not been published elsewhere in that form prior to the photographic reproductions in defendant's said catalog.

148 engravings, or "cuts", which are the property of plaintiff, and which were made up by plaintiff from the work of its own artists, and which were used in plaintiff's said catalog, were photographically reproduced in defendant's said catalog.

171 of plaintiff's special arbitrary figure numbers which were used in its said catalog were photographically reproduced in defendant's said catalog.

175 defects, imperfections or errors of type or engravings, which appear in plaintiff's said catalog, were photographically reproduced in defendant's said catalog.

I am further confirmed in my opinion by the fact as it appears in the evidence of an expert printer that the defendant's catalog was photographically reproduced. Further, the pages containing errors could not be exactly reproduced in type, but would be by photographing them.

Plaintiff's catalog is copyrightable matter. Da Prato Statuary Co. v. Giuliani Statuary Co., C.C., 189 F. 90; J. H. White Mfg. Co. v. Shapiro, D.C., 227 F. 957; Norris et al. v. No-Leak-O Piston Ring Co., D.C., 271 F. 536; Burndy Engineering Co., Inc., v. Penn-Union Electrical Corp., D. C., 25 F.Supp. 507; Kraft v. Cohen, D.C., 32 F.Supp. 821.

■ In the defendant's catalog as of fact there are many errors, which are exact reproductions of the errors found in plaintiff's John Simmons Co. catalog, and the reproduction of errors is strong proof of copying. Callaghan v. Myers, 128 U.S. 617, 9 S.Ct. 177, 32 L.Ed. 547; Lawrence v. Dana, F.Cas. No. 8,136; Investment Service Co. v. Fitch Pub. Co., 7 Cir., 291 F. 1010; General Drafting Co. v. Andrews, 2 Cir., 37 F.2d 54; Frank Shepard Co. v. Zachary P. Taylor Pub. Co., 2 Cir., 193 F. 991; Sammons v. Larkin, D.C., 38 F.Supp. 649.

■ Plaintiff collected, edited and compiled the information it received in order to produce the John Simmons Co. catalog,

and is entitled to protection, but even had all the information from which plaintiff prepared the said catalog been available to any reputable plumbing trader, that would not give the defendant the right to reproduce photographically any portion of plaintiff's catalog. Hartfield v. Peterson, 2 Cir., 91 F.2d 998, 1000; Jewelers' Circular Pub. Co. v. Keystone Pub. Co., 2 Cir., 281 F. 83, 26 A.L.R. 571, certiorari denied 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074; Yale University Press v. Row, Peterson & Co., D. C., 40 F.2d 290, 291.

Units were made up by plaintiff for exclusive use in the John Simmons Co. catalog, which were copied by defendant. Defendant on page 93 of his catalog copied the first item second column on page 25 of plaintiff's said catalog, a beam clamp bearing Simmon's trademark. Defendant on page 87 of his catalog copied the first item first column on page 147 of plaintiff's said catalog, an angle Hose Valve bearing the Simmon's trademark. Defendant on page 85 of his catalog copied the first item first column on page 148 of plaintiff's said catalog "Siamese Connections". That is condemned. Yale University Press v. Row, Peterson & Co. supra.

■ The burden of proof was on the plaintiff, throughout the case, to show that defendant copied its catalog, but the plaintiff having shown a strong prima facie case of copying, the burden was thrown upon the defendant, of going forward with evidence to explain the similarities. Frank Shepard Co. v. Zachary P. Taylor Pub. Co., 2 Cir., 193 F. 991, 993; Sammons v. Larkin, D.C., 38 F.Supp. 649, 652; General Drafting Co. v. Andrews, 2 Cir., 37 F.2d 54; Encyclopædia Britannica Co. v. American Newspaper Ass'n, C.C., 130 F. 460, 464.

Defendant has offered no evidence to explain the similarities, but contents himself with the simple denial that he copied any of plaintiff's catalog. He did not even produce the copy he said he, individually, made from which the defendant's catalog was produced or any other written evidence, or any testimony of any other person to sustain his denial.

The intent of the defendant to infringe is clearly shown.

■ It is unnecessary to show intent by the defendant to infringe. Pathe Exchange v. International Alliance, D.C., 3 F.Supp. 63, 65; Sammons v. Larkin, 38 F.Supp. 649, 653.

Intention to infringe may be shown to aggravate it. Frankel v. Irwin, D.C., 34 F.2d 142, 143; Meccano v. Wagner, D.C., 234 F. 912, 921, modified on other grounds, 6 Cir., 246 F. 603.

Defendant may be a competitor of John Simmons Co. as they are both, at least, in the plumbing supply business.

The plaintiff is not engaged in the same line of business as the defendant.

The defendant is not engaged in the business of producing, printing or furnishing catalogs.

The only catalog that defendant produced and published was for his own business, and there was no palming off of his catalog as that of the plaintiff's catalog for John Simmons Co.

■ Defendant did not in making up his said catalog use plaintiff's business or system, but actually took the work of the plaintiff and reproduced it photographically, and thus was clearly guilty of infringement of plaintiff's copyright, for which the law has provided a specific remedy. The following cases cited on behalf of the plaintiff, Maccano v. Wagner, D.C., 234 F. 912, modified on other grounds, 6 Cir., 246 F. 603; International News Service v. Associated Press, 248 U.S. 215, 39 S. Ct. 68, 63 L.Ed. 211, 2 A.L.R. 293; Fonotipia, Limited v. Bradley, C.C., 171 F. 951, are clearly distinguishable, as in those cases the plaintiffs and defendants were competitors in business, whereas in the case at bar they are not. Furthermore, while in equity the Courts will go a long way to protect the rights of a plaintiff who has no specific remedy, and will give a broad construction to the words "unfair competition" to accomplish that result, in patent and copyright cases there should be some act in addition to mere infringement to constitute unfair competition. In the case at bar the infringement was clearly shown, but no acts in addition to infringement were shown, and plaintiff will be protected in all its rights under the Copyright Law.

The claim of the plaintiff for unfair competition can not be sustained.

■ The defendant's contention that plaintiff was guilty of gross fraud and piracy, sufficient to cause equity to refuse to grant relief, finds no support in the evidence.

Plaintiff, wherever it used a plate or printed matter of any manufacturer or jobber, in all cases obtained the manufacturers or jobbers consent, and in many instances edited what it received, and there was no fraud or piracy in that, and also made a part of the catalog plates and printed matter which was its own. Defendant, on the contrary, without application to the manufacturers or jobbers and to plaintiff for permission, produced his catalog by reproducing in very large part plaintiff's said catalog by photographical process.

Defendant's infringement is of such a character that it cannot be said what if any part of defendant's catalog should be relieved from injunction or from the charge of infringement.

A decree should be granted in favor of the plaintiff against the defendant, with injunction and damages and loss of profits for the infringement, and plaintiff not having waived an accounting, with costs and the usual order of reference to include not only the question of damages and loss of profits, but also the costs to be allowed by way of a reasonable counsel fee for plaintiff.