**CHAIN STORE BUSINESS GUIDE, Inc.
v. WEXLER.**

Civ. 45–607.

United States District Court
S. D. New York.

June 9, 1948.

Hess, Mela & Popkin, of New York City, for plaintiff.

Schlesinger & Krinsky, of New York City, for defendant.

HULBERT, District Judge.

Plaintiff moves for an injunction pendente lite.

The action is for an infringement of copyright.

Plaintiff, incorporated under the laws of the State of New York in 1945 is, and for eleven years prior thereto its predecessor under the same name, unincorporated, was engaged in the business of gathering information and compiling and publishing directories and selling them to manufacturers of merchandise and others.

It is conceded by plaintiff that names were secured in part from 1,816 telephone books covering approximately 7,800 cities and towns throughout the United States. A card index for each name appearing in any of its directories is kept by the plaintiff upon which is entered not only the name and address, but other information, including the names of the buyers for the stores and this data is furnished for the use of its customers upon request, with changes of addresses, business names, etc., as and when such occurred. In addition thereto, forms of questionnaires or listings are sent to the various chains and independent stores at least once a year in which plaintiff requests further information such as headquarters address, number of stores in actual operation and also requesting that any errors in plaintiff's directory with respect to the particular chain or store be indicated so that correction may be made.

Plaintiff publishes and sells six directories, classified as to particular trades, and the cost of preparing and mailing the questionnaire is approximately $500. for each, or $3,000.

Plaintiff also claims to have an arrangement with publishers of various magazines under which each magazine's circulation salesmen, who cover every large city in the United States, send plaintiff reports containing up-to-date information with respect to chain and independent stores to aid plaintiff in keeping its facilities up to date. Such magazines also supply plaintiff with a clipping service, to which it subscribes, containing daily reports of chain store events, including store openings, changes of addresses, changes of names and other pertinent information. In order to segregate, classify, record and then compile such data in directory form, plaintiff's vice president, Slobod, devotes a large portion of his time to research and the supervision of a staff of five full time experienced researchers in the preparation of plaintiff's directories, which have an average sales price of $10. These directories, which form part of the record in this case, are marked Exhibits A to F inclusive and have been copyrighted, as appears from photostatic copy of certificate of copyright issued by the United States Register of Copyrights and attached to the moving papers.

The defendant does business under the registered trade name of the Reach All Company, at 209 East Second Street, New York, N. Y., and since December, 1946, has been engaged in the business of addressing and mailing. The accused infringement are sheets about the size of a page in the standard New York City telephone directory, divided into three columns, eleven sections in each column, perforated, with paste on the reverse side, so that each section, bearing a name and address, may be detached and pasted on an envelope, wrapper or other agency used for mailing or such other purpose as the defendant's customer may have occasion to use it for.

Plaintiff has submitted to the court samples of these sheets which are marked Exhibits A-1, A-2, B-1, C-1, D-1, D-2, D-3, E-1, E-2, and F-1. Plaintiff explains that ten exhibits of the defendant's "directories" is due to the action of the defendant subdividing the information taken from plaintiff's Exhibits A, D and E.

Mr. Slobod states in his moving affidavit, that on April 8, 1948, three days after he learned defendant had copied plaintiff's directories, he purchased by mail from defendant three of his directories, viz., A-1, B-1 and C-1. Five days later he went to the defendant's place of business, and using an assumed name and address, purchased and paid for and took away copies of the additional "directories" produced by the defendant, and he annexes to his affidavit as Exhibit 7 a photostatic copy of a bill in the amount of $54.69 which he paid defendant for the later purchases above mentioned.

On that occasion, he states that he engaged the defendant in a conversation as to the merits of advertising, and remarked that he was using the Chain Store Business Guide, and was interested only in directories that contained listings of firms other than those listed in similar directories of Chain Store Business Guide, Inc. He asked defendant if the latter had a copy of one of the directories published by Chain Store Business Guide, Inc. so that he, Slobod, could compare it with a similar directory of defendant, whereupon defendant produced a copy of plaintiff's Exhibit A, which Slobod opened at random at page 35 and asked defendant to show him the corresponding page in his directory, which he did (page 20) Exhibit A-1. After making comparisons, Slobod remarked that two directories seemed to be identical, and asked defendant if plaintiff's directory had any names that defendant's directory did not have and was informed that it did not; he then asked defendant if his directory had any names that plaintiff's directory did not, and the defendant answered "No." Slobod then asked whether the Chain Store Business Guide people permitted him to copy their directories and defendant replied "No", and added "You cannot copyright information, you can only copyright format". Slobod then remarked that he was very much surprised that anybody could copy other directories and sell them, whereupon the defendant replied that was exactly what he was doing, and added if Slobod bought directories from him rather than from other directory publishers he could save about $5 per directory on the

average. Defendant admits the meeting with Slobod but denies its import.

Plaintiff then undertakes an analysis of its six directories and the accused infringements. It will suffice to state the following:

Plaintiff's directory Exhibit A, is designated "Chain Store Guide 1947 Directory, 5¢–$1.00–Variety and General Merchandise Chains" and bears legend "Copyright July 1947 Chain Store Business Guide, Inc." Plaintiff charges that defendant issued two directories copied from plaintiff's single directory Exhibit A, one directory, Exhibit A–1 known as "Chains 5–$1.00 Variety Stores" was copied from pages 5 to 80 of plaintiff's Exhibit A. The other A–2, known as "Chains General Merchandise" was copied from pages 81 to 203 of plaintiff's Exhibit A.

Pages 5 to 80 of Exhibit A contains exactly 1,543 names. Exhibit A–1 (being a copy of pages 5 to 80 of Exhibit A) contains exactly 1,543 names. Pages 81 to 203 of Exhibit A contains exactly 1,632 names. Exhibit A–1 (being a copy of pages 81 to 203 of Exhibit A) contains exactly 1,632 names. In addition, various errors contained in plaintiff's Exhibit A are listed in Exhibit A–1. A similar comparison reveals similar existing conditions throughout the Exhibits A to F and A–1 to F–1 inclusive.

That this is no mere coincidence can hardly be questioned.

■ Copyrights may be obtained for "Books, including composite and cyclopedic works, directories, gazetteers, and other compilations;" 17 U.S.C.A. § 5. The moving papers show compliance with the Copyright Law. The certificates of Registration are prima facie evidence that all of its requirements have been fulfilled. 17 U.S.C.A. § 209. Freudenthal v. Hebrew Pub. Co., D.C., 44 F.Supp. 754. Citation of authority is hardly necessary to establish the right of the copywriter of a directory or other compilation to protection. See List Pub. Co. v. Keller, C.C., 30 F. 772; Jeweler's Circular Pub. Co. v. Keystone Pub. Co., 2 Cir., 281 F. 83, 26 A.L.R. 571, certiorari denied 259 U.S. 581, 42 S. Ct. 464, 66 L.Ed. 1074; College Entrance Book Co. v. Amsco Book Co., 2 Cir., 119 F.2d 874.

Where there is evidence of extensive copying of plaintiff's lists by defendant, there is sufficient proof of infringement to warrant the granting of an injunction. R. R. Donnelley & Sons, Inc., v. Haber, D.C., 43 F.Supp. 456; Sub-Contractors Register v. McGovern's Contractors & Builders Manual, D.C., 69 F.Supp. 507.

In Leon v. Pacific Telephone & Telegraph Co., 9 Cir., 91 F.2d 484, 486, the court held that the "use" of the material which defendant made was of no significance in the case, and said: " * * * Counsel have not disclosed a single authority, nor have we been able to find one, which lends any support to the proposition that wholesale copying and publication of copyrighted material can ever be fair use."

In Callaghan v. Myers, 128 U.S. 617, at page 662, 9 S.Ct. 177, 190, 32 L.Ed. 547, it was said: "It may be added that one of the most significant evidences of infringement exists frequently in the defendants' volumes, namely, the copying of errors. * * *."

■ The defendant asserts there is no originality in the plaintiff's directories and that the plaintiff is guilty of the very piracy with which it charges the defendant. This statement is not supported by the record. The defendant had the same opportunity to make use of the 1861 telephone directories as did the plaintiff, not considering other data which plaintiff has made available. That he chose to utilize the result of the plaintiff's labor and expense entailed in its preparation for publication in plaintiff's directories is a silent confession of plaintiff's originality.

■ It is thought enough has been stated herein to warrant the granting of a preliminary injunction.

The plaintiff will be required to furnish a bond in the sum of $1,000. Settle order on notice.