## FARMER v. ELSTNER.

*(Circuit Court, E. D. Michigan. January 9, 1888.)*

1. COPYRIGHT—EXCERPTS FROM BOOK—PROOF OF INFRINGEMENT.
    Where the alleged violation of a copyright consists in excerpts from complainant's book, the court is bound to consider not only the quantity and quality of the matter appropriated, but the intention with which such appropriation is made, the extent to which the complainant is injured by it, and the damage to the defendant by an injunction.

2. SAME—INJUNCTION—DAMAGES.
    *It seems* that the complainant is not always bound to prove pecuniary damage to entitle him to an injunction.

3. SAME—EXCERPTS FROM BOOK—SEPARATION OF ORIGINAL MATTER.
    Where the piracy consists of extracts from different parts of complainant's publication, scattered through defendant's book, and it is impossible to separate these from the original matter, it is proper to apply the doctrine of confusion of goods, and enjoin the whole book.

4. SAME.
    But if the pirated matter can be separated from the rest of the book, the injunction should extend only to that portion of the book containing the pirated matter; especially where the suppression of the whole is likely to lead to consequences to the defendant out of all proportion to the damage done to the complainant.

5. SAME.
    Complainant was the author and proprietor of an elaborate book of 1,024 pages, entitled "A History of Detroit and Michigan, or the Metropolis Illustrated." Defendant's publication was a pamphlet of 274 pages, entitled "The Industries of Detroit;" the first 7 pages of which were mainly historical, and contained about 100 short extracts from the complainant's book. The remaining 200 pages consisted of advertisements only. *Held* that, as three-fourths of the extracts from complainant's book, and practically all to which he could lay claim as original matter, were contained in the first chapter, being the first 11 pages of the pamphlet, the injunction should extend only to this portion of the publication.

*(Syllabus by the Court.)*

In Equity.   On bill for injunction.

Plaintiff, Silas Farmer, was the author, publisher, and sole proprietor of an elaborate and exhaustive book of 1,024 pages, entitled "A History of Detroit and Michigan, or, the Metropolis Illustrated: A Chronological Cyclopedia of the Past and Present, including a Full Record of the Territorial Days in Michigan, and the Annals of Wayne County." This book was published and copyrighted in 1884, and sold at $10 per copy. In 1887 defendants published a pamphlet of 274 pages, entitled "The Industries of Detroit," the first 70 pages of which were mainly historical, descriptive, and statistical, and covered much the same ground already occupied by the plaintiff's book. The remaining 200 pages consisted of advertising matter only. The pamphlet was sold at 40 cents per copy, and large numbers were sold to advertisers, for gratuitous circulation. The pamphlet was evidently prepared for advertising purposes, and the principal profit to the defendants was obtained from the advertisements. The alleged piracies were very numerous in the first 70 pages, and consisted principally in the republication of facts with respect to the early history of Detroit, and particularly the life of Cadillac, the founder of the city, which were copied almost literally from plaintiff's volume, which facts had never before been published, and had been obtained by plaintiff from original sources at great labor and expense.

*E. C. Hinsdale* and *O. I. Walker*, for plaintiff.

*George S. Hosmer*, for defendant.

BROWN, J.   We have felt considerable difficulty in reaching a satisfactory conclusion in this case, from the fact that the piracies, though numerous, are not extensive; and from the further fact that defendant's pamphlet was evidently not intended to supersede, or in any way interfere with the sale of, the elaborate and instructive work of the plaintiff. Where defendant's publication is designed to rival or compete with the plaintiff's in the market, courts are astute to protect the technical rights of the plaintiff to his composition, and will even enjoin an imitation of his general plan and arrangement, though there be no plagiarism of sentences or ideas. Where defendant has been guilty of a complete or substantial reprint of plaintiff's work, no difficulty is encountered in granting an injunction; but where the alleged violation consists in excerpts from the plaintiff, the court is bound to consider not only the quantity and quality of the matter appropriated, but the intention with which such appropriation is made, the extent to which the plaintiff is injured by it, and the damage to the defendant by an injunction.

With reference to the *quantity and quality* taken, of course no general rule can be laid down, applicable to all cases. One writer might take all the vital part of another's book, though it might be but a small portion of the book in quantity. In many valuable books, particularly of a scientific character, the leading ideas of the author may be very few in number, the greater part of the work being devoted either to the illustration or amplification of these ideas, or to the reproduction of the ideas of other authors upon the same subject. The person who could seize

these leading ideas, or, to use an expression attributed to Macaulay, who "could tear the heart out of the book," though it involved the republication of only a single paragraph, might do the author substantial damage, while another might republish pages without imparting the same information. It is not only quantity, but value and quality, that are to be regarded in determining the question of piracy. *Bramwell* v. *Halcomb*, 3 Mylne & C. 738. "It must appear," said Vice-Chancellor SHADWELL, "where a complaint is made to this court, that the piracy has either been of what is called a large part or of a material part." Drone, Copyr. 524.

Regarding the *intent* with which the appropriation is made, it is obvious that the use of a certain amount of an author's production may be perfectly fair and legitimate in one case, while the use of a similar amount in another case might be unlawful. Thus, great liberty is exercised in permitting a reviewer to make extracts for the purposes of criticism, so long as such extracts are not made as a cover for a republication, or for the purpose of superseding the original work. Indeed, such quotations in the form of criticisms are frequently of great value to the author himself, and may actually increase the sale of his book. Other instances may be imagined, especially in the publication of legal and scientific works, where it would be almost impossible for a subsequent author to properly state the existing state of the science, without making quotations from preceding works. On the other hand, if the selections are made *animo furandi*, with intent to make use of them for the same purpose for which the original author used them, to convey in a different publication the information which he imparted, or to supplant him in his own territory, a small quantity will suffice to render the defendant liable to a charge of piracy. Thus, in *Campbell* v. *Scott*, 11 Sim. 31, the defendant published a work containing an original essay on Modern English Poetry, including biographical sketches of 43 modern poets, and selections from their poems, among which were six short poems, and parts of longer poems, the copyright whereof belonged to plaintiff. The selections constituted altogether the bulk of the defendant's work, but were alleged to have been introduced into it for the purpose of illustrating the essay. The court restrained the publication of the work as being an infringement of the plaintiff's copyright. The case of *Bradbury* v. *Hotten*, L. R. 8 Exch. 1, was an action at law by the proprietors of Punch against the defendant for reproducing nine cartoons of Napoleon III. published in Punch between 1849 and 1867, with descriptive writing underneath them. It was held by the court that a substantial part of the plaintiff's book or sheets of letterpress had been appropriated, and that he was entitled to recover. The jury, however, awarded but forty shillings damages.

In the case under consideration the defendant has made numerous, but not very lengthy, excerpts from plaintiff's book. These excerpts, however, are from the most valuable part of his work, and contain facts which had never before been published and which were obtained from original sources, at very considerable labor and expense. On nearly one-third

of the first 70 pages of defendant's book there are evidences of republication from plaintiff's. On the first 11 pages in particular it appears very clearly that a considerable part of the information contained was taken from it, without any credit to him. On page 9 it is said that "Champlain heard of the strait from Indians in 1603." The same page also contains statements as to Joliet and La Salle, as well as a statement regarding mounds as "evidently of Aztec origin," all taken from plaintiff's book. On page 10 is the following statement: "Antoine Laumet de la Mothe Cadillac was born March 5, 1658, at St. Nicholas de la Grave, in the department of Tarn and Garonne in France. He received a liberal education, was a lieutenant in the French army when he arrived in the new world, and was married at Quebec June 25, 1687, to Marie Terèse Guyon." These are specimens of the extracts made by the defendants from plaintiff's work to the number of about a hundred. There is no pretense that the compiler of this publication resorted to the original sources himself for this information, nor that he procured it from any other source than the plaintiff's book. Had he extended to this book the common courtesy of an acknowledgment, we should have looked upon his appropriation with much more favor than we are disposed to at present. As the case stands, the *animus furandi* is entirely clear.

The chief difficulty we have met with in this case is the absence of testimony showing that plaintiff has been, or is likely to be, injured by defendants' publication; and as it was not intended as a competing work in any sense of the term, it is doubtful in my mind whether its circulation would prevent the sale of a single copy of plaintiff's book. This book is an elaborate work upon the history, government, architecture, and present condition of the city. Defendants' pamphlet is a mere advertisement of its industries, prefaced by an historical sketch, which alone contains the pirated matter. Some of the facts taken from the plaintiff's book have never before been published, and were gathered by plaintiff from the original sources; but apparently that is not true of all of them. Many of these facts are matters within the common knowledge of those who are acquainted with the history of this city and state, and were taken by the plaintiff himself from prior works, or from sources equally accessible to the defendants. Such facts the defendants would have a right to republish without the plaintiff's assent, or without giving him credit for them. It is true there is an intimation in some cases that actual damage to the plaintiff need not be proven, and that if the piracy be established it is for the plaintiff himself to judge whether he will insist upon his right to a monopoly. Thus, in *Campbell* v. *Scott*, 11 Sim. 31, it was said that the plaintiff was the person best able to judge of the damage done him; and if the court does clearly see that there has been anything done which tends to an injury, the safest rule is to follow the legal right, and grant the injunction. In this case, however, the defendants had published six poems and parts of other poems, the copyright of which belonged to the plaintiff, and it was impossible to estimate accurately the damage done him. At the same time the facts showed it to be very probable that the plaintiff had lost the sale of a number of copies. But,

v.33F.no.7—32

notwithstanding this case, it was held by the same judge in the later case of *Sweet* v. *Cater*, 11 Sim. 572, that if the pirated matter is not considerable, that is, where passages which are neither numerous nor long have been taken from different parts of the original work, the court will not interfere to restrain the publication of the work complained of, but will leave plaintiff to seek his remedy at law. It seems to us, however, that plaintiff ought not to be remitted to his action for damages where the court can see that, from the impossibility of estimating these damages, the remedy must be entirely fallacious. It is probably on this ground that courts have been led in some cases to grant injunctions, though the piracy has been quite inconsiderable in extent. Thus, in *Kelly* v. *Hooper*, Drone, Copyr. 525, it appeared that the defendant had taken only three and one-half pages from plaintiff's directory of 870 pages, but these formed a large part of defendant's almanac and constituted its chief value. An injunction was granted. So, in *Cobbett* v. *Woodward*, L. R. 14 Eq. 407, where an upholsterer who had published an illustrated furnishing guide, with engravings of the articles of furniture which he sold, and descriptive remarks thereon, filed a bill to restrain the defendant, another upholsterer, from publishing for purposes of his own trade a similar work, in which many of the engravings and portions of the letterpress of the first work were alleged to have been copied, it was held that the defendant could not be restrained from publishing the plaintiff's illustrations, or such parts of his work as were not original, but merely descriptive of the stock; but as the defendant had taken eight lines from plaintiff's synopsis, and these were original remarks, it was held that the defendant was not entitled to use them without acknowledgment from the source from which they came, and that plaintiff was entitled to an injunction to restrain the publication of these eight lines.

Where the piracy is not of the entire book, nor of entire chapters or pages, but consists of extracts from different parts of the publication scattered through the defendant's book, the courts have sometimes applied the familiar doctrine of "confusion of goods," and have enjoined the whole book. Thus, in *Mawman* v. *Tegg*, 2 Russ. 385, Lord ELDON says:

"If the parts which have been copied cannot be separated from those which are original without destroying the use and value of the original matter, he who has made an improper use of that which did not belong to him must suffer the consequences of so doing. If a man mixes what belongs to him with what belongs to me, and the mixture be forbidden by the law, he must again separate them, and he must bear all the mischief and loss which the separation may occasion. If an individual chooses, in any work, to mix my literary matter with his own, he must be restrained from publishing the literary matter which belongs to me; and if the other parts of the work cannot be separated, and if by that means the injunction which restrains the publication of my literary matter prevents also the publication of his own literary matter, he has only himself to blame."

But it is equally clear that if the pirated matter can be separated, the injunction should extend only to that matter, leaving the defendant to do what he pleases with the rest of the book. Drone, Copyr. 527. Especially should this be done where an injunction is likely to lead to consequences

to the defendant out of all proportion to the damage done to the plaintiff, such, as in this case, to the practical destruction of some hundreds and perhaps thousands of copies. *Mawman* v. *Tegg*, 2 Russ. 385; *Webb* v. *Powers*, 2 Woodb. & M. 497; *Greene* v. *Bishop*, 1 Cliff. 186.

Upon examining the two books in this case, we were at first of the opinion that an injunction should be refused, upon the defendants executing a bond to respond in any damages the plaintiff might obtain in this case, or in an action of law; but the difficulty of estimating such damages seem to us a serious objection to this method of procedure; and that if the plaintiff is entitled to any relief at all it should be given him by injunction against the pirated portions of his book. Upon a careful examination of defendants' pamphlet we find that three-fourths of the extracts from the plaintiff's book, and practically all to which he can lay claim as original matter, are contained in 11 pages of this pamphlet, viz., pages 9 to 20, inclusive, entitled "Detroit's Early History;" and that substantial justice will be done to all parties by enjoining this portion of the defendant's publication. It is true there are about 20 extracts in the following 50 pages; but we think the court may take judicial notice of the fact that most, if not all of them, are of facts which were not originally published by plaintiff, and which the defendants could easily, if they did not actually, obtain from other works readily accessible to the public. To this extent we think plaintiff is entitled to relief, and to this extent only the injunction will go.