(117 App. Div. 172)

E. P. DUTTON & CO. v. CUPPLES et al.

(Supreme Court, Appellate Division, First Department.   January 25, 1907.)

1. TRADE-MARKS AND TRADE-NAMES—UNFAIR TRADE—INJUNCTION.

Where plaintiff published a series of books each containing a poem or hymn, which could not have been copyrighted, the books being illustrated with illuminated capitals and type adapted from ancient missals, as well as by pictures in colors, some being originally prepared by plaintiff's artists and some being copies of well known paintings, a temporary injunction would lie to restrain defendant from selling an identical series—save in artistic merit—reproduced by photographic processes

from plaintiff's book, though plaintiff did not show dehors the books that they were inspired by fraudulent intent, nor that any person had been deceived.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 108, 81.]

2. APPEAL—REVIEW—INTERLOCUTORY ORDER—GRANT OF INJUNCTION.

Where, on appeal from an order denying an injunction pendente lite, it appears that no substantially different state of facts will be developed on the trial from that presented on the appeal, the propriety of issuing or refusing the injunction will be determined.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, § 3523.]

Appeal from Special Term, New York County.

Action by E. P. Dutton & Co. against Victor W. Cupples and another. Appeal by plaintiff from an order denying an injunction pendente lite. Reversed, and motion granted.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Arthur L. Marvin, for appellant.
Wm. A. Megrath, for respondents.

SCOTT, J. The plaintiff seeks an injunction to restrain defendants from publishing, selling, or offering for sale certain books, designated the "Eureka Series." Both plaintiff and defendant are booksellers and publishers, and plaintiff bases its demand for an injunction upon the claim that the defendants have been guilty of unfair competition or unfair trade in putting upon the market a series of books, so similar in appearance and make-up to a set of books which plaintiff has published and sold for a number of years as to indicate a conscious, and probably successful, effort to deceive those buying defendant's publication, believing them to be those published by plaintiff, and thereby the plaintiff will be injured in its business, and purchasers will be also injured, because defendant's books, although an obvious copy of plaintiff's, are concededly of less artistic and substantial value. The plaintiff has no copyright, and claims nothing on that score. The affidavits read on both sides are voluminous, but the most convincing proofs are the books themselves, of which copies were produced on the argument and are now before us.

In ordinary cases, where a preliminary injunction has been denied in the court below, we are slow to interfere with the action of that court, preferring to leave the question for the trial of the cause. In the present case, however, it is quite apparent that no substantially different state of facts will be developed upon the trial from that which is presented on this appeal; for it may safely be said that there is little or no dispute as to any material fact, the difference between the parties resulting from the different deductions and conclusions which they respectively draw from the facts; and, as has already been said, the crucial, decisive evidence consists of the books themselves. Under such circumstances it has been the practice of this court to determine, upon appeal from the order, the propriety of issuing or refusing to issue a preliminary injunction. McLoughlin v. Singer, 33 App. Div. 185–189, 53 N. Y. Supp. 342.

About the year 1900 the plaintiff formed the project of publishing a set of books especially adapted for sale during the Christmas holiday season, and in the year 1901 did publish and place upon the market a number of such books. The books were small and in each was printed a single (or in some cases more than one) short poem or hymn which had attained general fame and popularity in the public estimation. The books were profusely illustrated with illuminated capitals, and type adapted from that used in ancient missals, as well as by pictures in colors; some being originally prepared by plaintiff's artists and some being copies of well known paintings. Each copy was bound in an attractive and highly decorated leatherette cover, one-half white and one-half in color with illustrated sides, and with a large picture in color, appropriate to the sentiment conveyed by the particular hymn or poem contained in the book. The books were possessed of considerable artistic merit; and the workmanship as to type, coloring, illustrating, and bindings was of a high order. Much success attended the publication of these books, so that plaintiff in succeeding years, not only reprinted the books first published, but added many books, in the same general style, to the series, and had large sales and reaped substantial profit. In the year 1906 the defendant published and placed upon the market the series of books the publication and sale of which is now sought to be restrained. It appears from the affidavit of an expert, and indeed is quite apparent to the lay eye, that the defendants have by some photographic or photo-lithographic process copied the printing, illuminations, borders, and pictures contained in plaintiff's books, and have encased them in a similarly colored binding, upon which has been copied the illustrations and letterings found upon plaintiff's books. In short, they have reproduced plaintiff's books as faithfully and exactly as could be done by photography. The work has been much less artistically and expensively done, although so far as possible without too great expense. The colors used by plaintiff have been reproduced or imitated. The result has been that defendants have published cheap and inartistic copies of plaintiff's books, which have been offered for sale at a much smaller price. Placed side by side no one could fail to appreciate the difference between the publications, and yet could not fail to be struck by the careful attempt to produce an imitation. Seen apart from each other, so that they could not be compared, nothing would be easier than for an incautious buyer to be deceived by the resemblance and to purchase one of defendant's books, believing that he was purchasing plaintiff's. The injury likely to be done plaintiff is twofold: First, it is threatened with a loss of sales and consequent profit; and, secondly, it is threatened with a loss of reputation as a producer of fine and artistic books.

As has been said, the plaintiff claims no protection from the copyright laws, and, indeed, few, if any, of the poems and hymns printed in the series could have been copyrighted. It does not claim that the idea of publishing a single hymn or poem in a separate volume, with illustrations, is original with it, nor does it claim originality for the idea of a decorated border for each page, the half-white binding with decorations and pictures, or the combination in one book of a number of short songs or poems relating to one general subject. It does claim

however, and its contention is not disputed, that the particular designs of the covers of its books, the particular borders to its pages, and the particular illustrations were original with it. It therefore insists that each book considered as a whole, distinct from its various parts, to wit, a combination of binding, of type, of illuminated capitals, of illustrations, of borders, is something which belongs solely and exclusively to plaintiff, and that it has a distinct property right therein. The plaintiff cannot, and does not question, defendants' right to publish any one, or all, of the same hymns and poems; to publish them in half-white binding with decorated and pictured binding; to adopt any form of type it pleases; to illustrate the books; and to decorate the borders of its pages—but it is contended, and, as we think, with reason, that it is violative of the rule of fair trading and fair competition as established and enforced by law to prohibit and offer for sale such identical copies (save in artistic merit and workmanship) of the books which plaintiff had published and for which it had created a profitable demand. The obvious purpose of publishing such copies was to trade upon the favorable reputation which plaintiff had established for its books, to deceive many purchasers into the belief that they were purchasing plaintiff's books, and to damage plaintiff by the unfair use of its ingenuity in devising the general makeup of its books, and of its success in placing the books upon the market.

In such a case it was unnecessary for plaintiff to prove, dehors the books themselves, that defendants were inspired by a fraudulent intent. Day v. Webster, 23 App. Div. 601, 49 N. Y. Supp. 314; Dunn Co. v. Trix Mfg. Co., 50 App. Div. 75, 63 N. Y. Supp. 333. Nor in so flagrant a case as the present is it necessary to prove that any person was actually deceived by the imitation. It is apparent that there was every probability of such deception, and that is precisely what the law seeks to prevent. Vulcan v. Myers, 139 N. Y. 364, 34 N. E. 904. Upon the general right of the plaintiff to protective relief, we cannot see any reason why the same rule should not be applied to a book that has been applied to a game, or to cigars or to anything else which is distinguished by a label, or by the distinctive form or style of the package. The decisive fact is that the defendants are unfairly and fraudulently attempting to trade upon the reputation which plaintiff has built up for its books. The right to injunctive relief in such a case is too firmly established to require the citation of authorities.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs, upon plaintiff's giving the usual undertaking in the sum of $1,000. All concur.

INGRAHAM, J. I concur fully in Mr. Justice SCOTT'S opinion. If these defendants had put up any ordinary merchandise in a package which exactly reproduced the plaintiff's package and labels and offered it for sale, there would be no question but that it would be unfair competition which a court of equity would enjoin. The plaintiff has established an important business manufacturing and selling certain literary and artistic productions which it is conceded they have no exclusive right to manufacture and sell. The name of publisher of a book of this kind is unimportant. It is the general artistic appearance of the

book itself that attracts the purchaser, and I can see no reason why the defendant should be allowed to reproduce a book manufactured and sold by the plaintiff, in all its details and peculiarities, so that it requires a comparison of the two articles to distinguish them than any other article of merchandise. It is, however, said that because the defendants can exactly reproduce the plaintiff's books by a cheap and inferior process, and are therefore able to sell them at a much lower price than that at which the plaintiff is able to sell the books it produces, that the court should not interfere. But it seems to me that this is the very reason why a court of equity interferes—to prevent a fraudulent and unfair competition by one manufacturer appropriating the skill and labor of another manufacturer in designing and manufacturing merchandise, so that one can reproduce the articles better designed and manufactured by avoiding the expense involved in the designing and preparation of the article undersell his competitor.

That these defendants manufactured the books that they offered for sale is not disputed. That they exactly reproduced the plaintiff's books is not disputed, and an inspection of the two books establishes that the ordinary purchaser, influenced only by the general effect and not by a comparison of the books themselves, would not detect the difference. Why should the defendant be allowed to appropriate the benefits of the experience, business sagacity, artistic ability, and of the money that the plaintiff has invested in these books by manufacturing an exact reproduction—avoiding the expense incurred by the plaintiff in designing and producing the books—and put them on the market under such circumstances as will deceive the casual purchaser and at a price which would be a strong inducement to purchase the defendants' rather than the plaintiff's productions? The defendants have the right to design these books, to combine the illustrations and the text, and to bind their books in such style and manner as they desire; but I do not think that they have the right to exactly reproduce the type, illustrations, binding and design of the plaintiff's books, although greatly inferior in artistic value, and sell them at a much lower price than the plaintiff can sell its books for. I can see no reason why the same general rule which has been adopted and enforced as to the general merchandise should not apply to books or any other article manufactured by one merchant for general sale and distribution, and it seems to me that upon the defendants' own statement a case is made out which justifies the interposition of a court of equity.