**SUB-CONTRACTORS REGISTER, Inc., v. McGOVERN'S CONTRACTORS & BUILDERS MANUAL, Inc., et al.**

District Court, S. D. New York.

Aug. 2, 1946.

Satterlee, Warfield & Stephens, of New York City (James F. Dwyer, of New York City, and William R. Distasio, of Brooklyn, N. Y., of counsel), for plaintiff.

Henry G. Littau, of New York City, for defendants.

CAFFEY, District Judge.

This is a motion by plaintiff upon the pleadings and supporting affidavits, under

Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, for summary judgment. The complaint charges defendants with having infringed plaintiff's copyright of a book, entitled "Contractors Register", copyrighted on March 6, 1945, and with unfair competition in copying plaintiff's book and appropriating plaintiff's color scheme for the cover of its book. The complaint seeks a permanent injunction, an accounting of plaintiff's damages and defendants' profits, an allowance of attorney's fees, and the destruction of all infringing books and the plates, molds, etc., used in printing them.

Since 1913 plaintiff and its predecessor have published annually, early in each year, a selective compilation, or directory, of various individuals and corporations connected with the building and construction trades. The 1945 edition covers such trades in New York, New Jersey, Connecticut, Boston, Philadelphia, Washington, and adjacent territories. Of approximately 40,000 such individuals and corporations in the New York and New Jersey areas which might have been included in such a directory plaintiff selected 7910 in 1945 and published their names, addresses, telephone numbers and, in many cases, their postal zone numbers, under various classifications, such as General Contractors, Plumbing Contractors, Elevatórs, etc. Fees were charged for such listings and also for display advertisements. The books were distributed free to those who, in plaintiff's opinion, would be interested, and in 1945 and 1946 more than 7,500 copies were so distributed.

Defendant McGovern had been plaintiff's general manager for about seven years prior to January, 1944, when he left such employment, in order, he says, "to organize and publish my own publication, McGovern's Manual, which is competing with plaintiff's directory for the advertising business." In 1945 and 1946 defendant, McGovern's Contractors and Builders Manual, Inc., McGovern's company, published a directory similar to plaintiff's which was entitled in 1945 "McGovern's Manual" and in 1946 "McGovern's Contractors and Builders Manual", James M. McGovern appearing on the title page of each as the editor. Each of these two publications covers only New York and New Jersey. Each is of the same size and general internal arrangement as plaintiff's directory of the previous year. Each contains similar classifications of the building and construction trades. Although each has fewer pages than plaintiff's directory of the previous year, it is apparently due to fewer classifications and fewer advertisements.

In defendant's 1946 directory there are 135 classifications in which are listed the names and members of firms in the New York and New Jersey areas and these are exactly the same as in plaintiff's 1945 directory. In other classifications the names and members of firms listed are approximately the same as in plaintiff's 1945 directory, a few having been added and a few omitted. The total listings in the New York and New Jersey areas are 7890 as against 7910 in plaintiff's 1945 directory.

In plaintiff's 1945 directory, there are 270 errors, such as mis-spelt names, wrong names, addresses, telephone or postal zone numbers, and concerns out of business or deceased, all of which are found in defendants' 1946 directory. One is the name of a musician, erroneously listed by both as a plastering contractor.

In defendant's 1946 directory there are 50 display advertisements which are identical in language and typography (style of type and set-up) with the same advertisements in plaintiff's 1945 directory. It would seem that defendants photostated, or otherwise reproduced, these advertisements from plaintiff's 1945 directory, for plaintiff's general manager swears that, with a few minor exceptions, they were designed, set up and plates prepared by it; no copy or plates being furnished it by the advertisers.

Many similar errors and identical advertisements appeared in defendant's 1945 directory when compared with plaintiff's 1944 directory.

Since 1930 plaintiff's directory has been published with a blue cover and orange-yellow lettering thereon. It came to be called the "Blue Book". Defendant's 1945 directory, its first one, was published with a green cover, but it was changed in 1946 to a blue cover, of almost the same shade as

plaintiff's, with gold lettering. This 1946 book is very similar in appearance to plaintiff's 1945 book.

In his opposing affidavit McGovern swears that he did not copy a single name from plaintiff's directory, that his directory is entirely original with him and that he "employed a staff of workers who compiled the names from the Classified Directories of the Telephone Company and from Daily Building Reports which contained names, addresses and telephone numbers of firms in the building and construction industries, such as, Brown's Daily Building Reports, Dow's Daily Building Reports and others." He also points out that the Classified Telephone Directory contains classifications which are the same as those in both his book and the plaintiff's, and also lists of names thereunder which are very similar to those in both books. He says that all this explains why the list of names in his Manual are similar to the list of names in plaintiff's book.

As to the errors above referred to, all that he says is that he is prepared to prove that they are only changes of address or telephone numbers that took place before the change was noted in the telephone book. As to copying the advertisements he says only that, if those in defendant's book are similar to those in plaintiff's book, it is because the advertisers requested it and, in many cases, owned the cuts used and loaned them to both defendants and plaintiff.

It will be noted that he makes no attempt to explain how the errors in postal zone numbers (the Classified Telephone Directories do not contain postal zone numbers), mis-spelt or wrong names, or concerns out of business or deceased, occurred in defendant's book. Nor does he explain how it happened that, in cases where the advertisers did not furnish the cuts to both, the advertisements in his book are identical with those in plaintiff's book in every respect. He makes no denial that he photostated, or otherwise reproduced, those advertisements. The reason for the change from a green to a blue cover is said to be that he could not get green, although he had ordered it, because of war-time shortages in material, which seems rather implausible.

It can hardly be said that what is stated in this opposing affidavit rebuts the claim of unfair competition or raises any genuine issue of fact.

Plaintiff claims that these identities in the names and numbers of firms listed, taken together with the errors repeated and the advertisements reproduced, indicate clearly that defendants in their 1946 directory merely copied plaintiff's 1945 directory and did no original research or investigation in compiling their 1946 directory.

It has frequently been held in cases involving alleged infringements of copyrighted directories, or other compilations of facts and figures, that reproduction in the alleged infringing book of errors, omissions and peculiarities appearing in the copyrighted book constitute the strongest evidence of literary piracy, not only of such errors and peculiarities but also of the other portions of the copyrighted book.

In List Publishing Co. v. Keller, C.C., S.D.N.Y., 30 F. 772, 774, complainant, the proprietor of a copyrighted "society" directory, entitled "The List", complained that it was infringed by defendant's directory, entitled "The Social Register". In granting a preliminary injunction Judge Wallace, sitting in this district, said:

"In a case like this, when a close resemblance is the necessary consequence of the use of common materials, the existence of the same errors in the two publications affords one of the surest tests of copying. The improbability that both compilers would have made the same mistakes, if both had derived their information from independent sources, suggests such a cogent presumption of copying by the later compiler from the first that it can be overcome only by clear evidence to the contrary. Mawman v. Tegg, 2 Russ. 393; Spiers v. Brown, 31 Law T. 16; Lawrence v. Dana, 2 Amer.Law T. (N.S.) 402.

"The complainant relies upon this criterion here. The List contains a selection of about 6,000 names and addresses of persons residing in New York city out of the 313,000 names which appear in the general city directory. The Social Register contains about 3,500 names and addresses of persons residing in New York city, and of

this number over 2,800 appear in the List. The fact that 2,800 of the names and addresses in the defendant's book originally appeared in the complainant's book, would standing alone, be quite inconclusive. But when it is shown that 39 errors in complainant's book, consisting of misprints, erroneous addresses, insertion of names of persons who never existed, and insertions of names of deceased persons, are reproduced in the defendant's book, although it was not published until more than a year after the complainant's book was published, a strong presumptive case of piracy is made out." See also Jeweler's Circular Publishing Co. v. Keystone Publishing Co., 2 Cir., 281 F. 83, 26 A.L.R. 571.

■ Reproduction of errors is most significant evidence of piracy and absence of original research. Callaghan v. Myers, 128 U.S. 617, 662, 9 S.Ct. 177, 32 L.Ed. 547; Produce Reporter Co. v. Fruit Produce Rating Agency, D.C., N.D.Ill., 1 F.2d 58, 61.

Copying of errors justifies the conclusion, unless explained, that other portions of the copyrighted work have also been copied. Frank Shepard Co. v. Zachary P. Taylor Publishing Co., 2 Cir., 193 F. 991, 993; Investment Service Co. v. Fitch Publishing Co., 7 Cir., 291 F. 1010, 1011.

In Lawrence v. Dana, C.C.Mass., Fed. Cas. No. 8,136, 15 Fed.Cas. 26, 57, the court said (middle of right-hand column): "Other authorities may be cited where the presumption arising from the identity of inaccuracies is carried much further, and where it is held that when a considerable number of passages are proved to have been copied by the copying of the blunders in them, other passages which are the same with passages in the original book must be presumed, prima facie, to be likewise copied, though no blunders occur in them."

[3] Photographic reproductions of portions of the copyrighted work also constitute infringement. R. R. Donnelley & Son Co. v. Haber, D.C., E.D.N.Y., 43 F.Supp. 456, 457, 458.

In Farmer v. Elstner, C.C., E.D.Mich., 33 F. 494, 495, Judge Brown, later Supreme Court Justice, said: "Where defendant's publication is designed to rival or compete with the plaintiff's market, courts are astute to protect the technical rights of the plaintiff to his composition, and will even enjoin an imitation of his general plan and arrangement, though there be no plagiarism of sentences or ideas."

And at page 498 of 33 F. Mr. Justice Brown quoted what Lord Eldon said in Mawman v. Tegg, 2 Russ. 385, 390, 391; 38 English Reports, Full Reprint, page 380, 383, as follows: "* * * If the parts which have been copied, cannot be separated from those which are original without destroying the use and value of the original matter, he who has made an improper use of that which did not belong to him must suffer the consequences of so doing. If a man mixes what belongs to him with what belongs to me, and the mixture be forbidden by the law, he must again separate them, and he must bear all the mischief and loss which the separation may occasion. If an individual chooses, in any work, to mix my literary matter with his own, he must be restrained from publishing the literary matter which belongs to me; and if the other parts of the work cannot be separated, and if by that means the injunction which restrained the publication of my literary matter prevents also the publication of his own literary matter, he has only himself to blame." See also American Travel & Hotel Directory Co., Inc. v. Gehring Publishing Co., Inc., D.C., S.D.N.Y., 4 F.2d 415, and Hartfield v. Peterson, 2 Cir., 91 F.2d 998.

■ The conclusion that defendants have infringed the copyright of plaintiff's 1945 directory by their 1946 directory is inescapable. In consequence, an injunction will issue restraining further infringement.

■■ Plaintiff also charges defendants with unfair competition in copying the size, the internal arrangement and the blue cover with orange-yellow lettering thereon of its Register and seeks an injunction also on that ground. In its moving affidavit plaintiff sets forth a number of instances of alleged unfair practices on the part of defendants which are said to have confused and misled plaintiff's customers; but it is not shown that the affiant is competent to testify as to them. They are mostly hear-

say statements and, if testified to by the affiant, would not be admissible in evidence. They cannot be accepted by me as facts. See Rule 56(e). Plaintiff's right to a summary judgment on this ground must rest upon a comparison of the several directories. Such a comparison leads to the inevitable conclusion that defendants are guilty of unfair competition.

Defendant's two directories have the same size of page as plaintiff's 1944 and 1945 Registers, have the same general internal arrangement and, in the body of the work, have the same size and style of type. Although the classifications are fewer in number and differ in many instances from plaintiff's classifications, and the headings are in a different style of type, and although many advertisements are different in content, set-up and names of advertisers from those in plaintiff's Registers, the general internal appearance and content of defendant's two directories are such that they might easily be mistaken for plaintiff's Registers.

Defendant published its first directory with a green cover, readily distinguishable from plaintiff's Register. But the next year (1946) it changed to a blue cover of practically the same shade as plaintiff's. The lettering was in gold, not very different in appearance to a casual observer from the orange-yellow lettering on plaintiff's book. So also both plaintiff's and defendant's directories are intended to circulate among, and to be used by, the same concerns.

Although no publisher of a book can have a monopoly of the size of the page, the size or style of type used, the general internal arrangement of the contents, or the color of the cover and lettering thereon, unfair competition may exist when another publisher of a similar book, a new comer in the field, copies or imitates all these features in its own book, so that its book so nearly resembles the other book as to mislead the public into thinking that the book was published by the first publisher. A comparison of defendant's 1946 directory with plaintiff's 1945 Register shows that the public may be easily misled into thinking that defendant's directory was published by plaintiff.

In Caron Corp. v. V. Vivaudou, Inc., 2 Cir., 4 F.2d 995, it was held, as stated in the headnote, that "While there is no monopoly in the use of a word, color, or ornament, yet the right of one to use such combination as he chooses will be restrained, where combination selected so simulates the make-up of another as to be likely to divert latter's customers."

In E. P. Dutton & Co. v. Cupples, 117 App.Div. 172, 102 N.Y.S. 309, plaintiff had published and sold for several years a series of illustrated books, called the "Eureka Series", which contained one or more short poems or hymns which had attained general fame and popularity. They had considerable artistic merit and were of a high order of workmanship as to type, coloring, illustrating and binding. Defendants published and sold at a much lower price cheap and inartistic copies of plaintiff's books, apparently photographically reproduced. Plaintiff did not claim that defendants had no right to print the poems and hymns in any form that they might choose but it claimed that it was entitled to an injunction against publication of such copies on the ground of unfair competition. In granting an injunction the court said at page 176 of 117 App.Div., at page 312 of 102 N.Y.S.: "Upon the general right of the plaintiff to protective relief we cannot see any reason why the same rule should not be applied to a book that has been applied to a game, or to cigars or to anything else which is distinguished by a label, or by the distinctive form or style of the package. The decisive fact is that the defendants are unfairly and fraudulently attempting to trade upon the reputation which plaintiff has built up for its books. The right to injunctive relief in such a case is too firmly established to require the citation of authorities." See also Globe-Wornicke Co. v. Brown & Besley, 7 Cir., 121 F. 90, and Time, Inc. v. Ultem Publications, Inc., 2 Cir., 96 F.2d 164.

In addition, plaintiff asks that defendants be required to deliver up for destruction all infringing copies and all plates, molds and other matter for making such infringing copies and to pay costs and reasonable attorney's fees. To all this he is entitled. I will allow the sum of $500 as

512

a reasonable attorney's fee. Costs will be taxed by the clerk.

Having due regard to the provisions of Rule 65, plaintiff will submit to me for approval, upon notice of not less than five days to defendant's attorney, a form of judgment declaring that defendant's 1946 directory is an infringement upon plaintiff's 1945 Register and that defendants are guilty of unfair competition in the publication of their 1946 directory, and permanently enjoining defendants from further publication, sale or distribution in any manner of any directory of individuals and corporations connected with the building and construction trades in New York, New Jersey, Connecticut, Boston, Philadelphia, Washington and adjacent territories which infringes in its contents, cover and general design upon plaintiff's Contractors Register, and directing the surrender to the United States Marshal for the Southern District of New York for destruction of all copies of their 1946 directory and all plates, molds and other matters for making such directory.

The question of damages and profits will be determined when the case is reached for trial or plaintiff may apply for a reference to a Special Master.