**FREDERICK WARNE & CO., INC., Plaintiff,**

v.

**BOOK SALES INC., Defendant.**

**No. 78 Civ. 2375.**

United States District Court, S. D. New York.

Dec. 19, 1979.

Curtis, Morris & Safford, New York City, for plaintiff by Pasquale A. Razzano, New York City.

Gottlieb, Rackman & Reisman, New York City, for defendant by George Gottlieb, New York City.

## OPINION ON MOTIONS FOR SUMMARY JUDGMENT

SOFAER, District Judge.

Frederick Warne & Co., Inc. ("Warne"), brings this trademark infringement action against Book Sales, Inc. ("BSI") under Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. § 1114(1) and § 1125(a) respectively, as well as under the New York Anti-Dilution Statute, General Business Law § 368–d. The case is before the court on cross motions for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff Warne publishes the well-known series of children's books written and illustrated by Beatrix Potter, and sold under the trademark "The Original Peter Rabbit Books." Warne was, in fact, Miss Potter's original publisher; printing the first volume of her series, *The Tale of Peter Rabbit*, in 1902. Since then, millions of children have been delighted—and some, no doubt, terrified—by the adventures of the naughty rabbit. Subsequent volumes brought to life the antics of Squirrel Nutkin, the mischief of the Two Bad Mice, the mysterious ways of Mrs. Tiggy-Winkle, and tales of Miss Potter's many other endearing characters.

For years, Warne and Miss Potter enjoyed the profits generated by their extraordinarily popular series. Substantial sales continue today. But because seven of the books, in issue here, are no longer—or never were—covered by copyright protection in the United States, several new editions of Miss Potter's works have recently appeared on the market to compete with Warne's editions. Warne concedes that the seven works are in the public domain. Nevertheless, Warne claims exclusive rights in the cover illustrations, and character marks derived from those illustrations, which were originally created by Miss Potter for Warne's editions of the seven books, and which do not appear within the text of the books themselves.[1] In addition, it claims exclusive trademark rights in an illustration appearing within *The Tale of Peter Rabbit*, referred to as the "sitting rabbit." Three of the covers have been registered under the Lanham Act as book trademarks—the "running rabbit," the "dancing squirrel," and the "reading mouse." Protection for the unregistered marks is claimed on the basis of Section 43(a) of the Act, which permits claimants to prove valid-

---

1. Seven of the trademarks involved in this litigation are derived from the cover illustrations of the following works by Miss Potter:

   The Tale of Peter Rabbit
   The Tale of Two Bad Mice
   The Tale of Mrs. Tiggy-Winkle
   The Tale of Mr. Jeremy Fisher
   The Tale of Squirrel Nutkin
   The Tale of Benjamin Bunny.
   The Tailor of Gloucester

ity without the benefit of the presumption of validity that registration confers.

Warne has creatively exploited public affection for Miss Potter's characters by using, and licensing the use of, the eight illustrations on a variety of commercial products.[2] Thanks to its marketing efforts, Warne claims, the characters portrayed in the eight illustrations, "particularly the 'running rabbit' have attained a place in the public esteem comparable to Mickey Mouse, Peter Pan, and Raggedy Ann and Andy." (Aff. of Richard Billington, ¶ 16.) The notion that a British cony, however endearing, could gain as important a place in American hearts as Mickey Mouse seems dubious. Both are rodents, it is true, and thus equally entitled to our affections. But Mickey has had the benefit of competing for the American heart and dollar through moving pictures, an insurmountable advantage. Luckily for plaintiff, though, its burden is far less than its papers suggest.

The controversy here concerns defendant's use of the illustrations in which plaintiff claims trademark protection. Since October 1977, defendant has marketed a book entitled "Peter Rabbit and Other Stories" ("the BSI Peter Rabbit book"). It combines the seven Potter stories now in the public domain into a single, large and colorful volume. In its book defendant photographically reproduced the drawings of Miss Potter that appeared in early Warne editions and juxtaposed these illustrations with text from the books in a sequence corresponding to those of the original works. Defendant went beyond reproducing the works as originally published, however. It also produced redrawings of the cover, illustrations from the seven Warne books and a redrawing of the "sitting rabbit" illustration. It placed the cover reproductions at the beginning and end of the stories for which they were originally designed. In addition, it used photographic reproductions from each of the original Warne covers as "corner ornaments" on most of the pages of each of the seven stories; the *Tale of Peter Rabbit*, for example, has a picture of the "running rabbit" on the lower right-hand corner of every page. Finally, BSI initially used a reproduction of the "sitting rabbit" design on the cover of its book. This design, it should be recalled, appeared within Miss Potter's original books, but has been used by Warne since 1972 as the principal symbol of its licensing enterprise. After publishing its editions with the "sitting rabbit" cover, and after plaintiff instituted this action, BSI switched to a "standing rabbit" design of its own creation.

Warne contends that BSI's use of all eight illustrations constitutes trademark infringement. It seeks injunctive relief as well as damages and an accounting.

Both plaintiff and defendant have moved for summary judgment. When these motions were made, representations by the parties suggested that no disputed facts existed that would require a trial. In particular, defendant seemed willing to concede the validity of plaintiff's claim to trademark protection, in order to test its argument that when copyright protection ended the books could be copied in their entirety. But, after briefs were submitted and argument held, it became clear that defendant is unwilling to concede that the illustrations in issue have acquired trademark significance, identifying Warne's publishing enterprise and not merely the Beatrix Potter works it publishes.

2. The seven cover illustrations have been used on the individual books for which they were created as well as on packaging for sets of Miss Potter's books. In addition, Warne has extensively used the cover illustration for the *Tale of Peter Rabbit*, referred to as the "running rabbit," on a variety of products, including the dust covers for several of Miss Potter's works. The "sitting rabbit" mark has been used on a number of original Warne publications, including "Peter Rabbit's Natural Food Cookbook", "The History of the Tale of Peter Rabbit", "Beatrix Potter Coloring Book", and Warne's "Complete Catalogue" of 1977. Finally, since 1972 Warne has licensed the right to use the marks to manufacturers of toys, clothing and a host of other commercial products. This licensing program has proved lucrative; Warne presently claims to earn $250,000 in royalties per year, representing sales of licensed products of approximately $5,000,000 a year.

As the Second Circuit has admonished, "[d]isputes between parties as to trade-mark validity and infringement can rarely be determined satisfactorily on a motion for summary judgment." *Marcus Breier Sons v. Marvlo Fabrics,* 173 F.2d 29 (2d Cir. 1949). Given the difficulty, indeed novelty, of the issues presented, full development of the facts at trial will be particularly important to a proper resolution of this case. That the parties have filed cross motions for summary judgment, arguing simultaneously that there is no genuine issue of material fact, has no bearing on this determination. *Rains v. Cascade Industries,* 402 F.2d 241, 245 (3d Cir. 1968). Consequently, and for the reasons that follow, summary judgment must be denied to both parties.

I. *Plaintiff's Claim to Trademark Protection*

To succeed in this action, plaintiff must first establish that it has valid trademark rights in the eight character illustrations as used on its books and other products. Section 45 of the Lanham Act defines a trademark as any "word, name, symbol, or device . . . adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others." 15 U.S.C. § 1127. Although the illustrations here are *capable* of distinguishing Warne's books from those of others, it cannot be said that they are so arbitrary, unique, and non-descriptive as to constitute "technical trademarks," which are presumed valid as soon as they are affixed to the goods and the goods are sold. *Blisscraft of Hollywood v. United Plastics Co.,* 294 F.2d 694 (2d Cir. 1961). Accordingly, plaintiff has the burden of establishing that these illustrations have acquired secondary meaning, defined as "[t]he power of a name or other configuration to symbolize a particular business, product or company." *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 203 n. 5 (2d Cir. 1979), *quoting Ideal Toy Corp. v. Kenner Products Division of General Mills Fun Group, Inc.,* 443 F.Supp. 291, 305 n. 14 (S.D.N.Y.1977).

In the instant case, it would not be enough that the illustrations in question have come to signify Beatrix Potter as author of the books; plaintiff must show that they have come to represent its goodwill and reputation as *publisher* of those books. Whether or not the illustrations have acquired that kind of secondary meaning is a question of fact, *Speed Products Co. v. Tinnerman Products, Inc.,* 222 F.2d 61 (2d Cir. 1955); *Turner v. HMH Publishing Co.,* 380 F.2d 224 (5th Cir.), *cert. denied,* 389 U.S. 1006, 88 S.Ct. 566, 19 L.Ed.2d 601 (1967); *see generally* McCarthy, *Trademarks and Unfair Competition* § 5:10, which may be proven by either direct or circumstantial evidence. As to those marks registered under the Lanham Act, the registration constitutes prima facie evidence of trademark validity. *See* Section 33(a), 15 U.S.C. § 1115(a); *see generally* McCarthy, *supra,* § 11:16, § 15:12.

In addition, plaintiff must establish that defendant's use of the eight illustrations is trademark infringement. Under Section 32(1) of the Act, a cause of action for infringement of a registered mark exists where a person uses the mark "in connection with the sale . . . or advertising of any goods . . . [where] such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). With respect to the unregistered illustrations, plaintiff may succeed under Section 43(a), a broadly worded provision which creates a federal cause of action for false designation of origin or false representation of goods or services. *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.,* 510 F.2d 1004, 1010 (5th Cir.), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975); *Joshua Meier Co. v. Albany Novelty Manufacturing Co.,* 236 F.2d 144, 147 (2d Cir. 1956). As a general rule, the same facts which support an action for trademark infringement—facts indicating likelihood of confusion—will support an action for unfair competition under Section 43(a). *Dallas Cap, supra,* 510 F.2d at 1010; *see American*

*Footwear Corp. v. General Footwear Co., Ltd.,* 609 F.2d 655, 665 (2d Cir. 1979). Likelihood of confusion is a factual inquiry, depending on a host of factors, no one of which is controlling. *E. g., Mushroom Makers, Inc. v. R. G. Barry Corporation,* 580 F.2d 44 (2d Cir. 1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

■ Contrary to what the parties suggested in their motion papers, and even though some of plaintiff's illustrations have been registered under the Lanham Act, defendant is unwilling to concede that any of the illustrations in issue are valid trademarks. Nor is defendant prepared to admit that there would be a likelihood of confusion arising from its use of those illustrations and marks in connection with its own Peter Rabbit publication. Because the present record does not permit a finding that the necessary elements of trademark infringement—secondary meaning and likelihood of confusion—exist, the plaintiff's motion for summary judgment must be denied. *See, e. g. Syntex Laboratories, Inc. v. Norwich Pharmacal Co.,* 315 F.Supp. 45 (S.D.N.Y.1970) (granting plaintiff's motion for preliminary injunction but denying plaintiff's motion for summary judgment), *aff'd.,* 437 F.2d 566 (2d Cir. 1971) (affirming injunctive relief); *National Color Laboratories, Inc. v. Philip's Foto Co.,* 273 F.Supp. 1002 (S.D.N.Y.1967); see generally McCarthy, *supra,* § 32:36.

II. *Defendant's Claim to Publish Freely*

■ Defendant contends that the disputed questions of fact requiring denial of plaintiff's motion need not be reached to find in defendant's favor. Defendant argues that its use of the illustrations and marks is legally protected because they are part of copyrightable works now in the public domain. This argument is not persuasive. The fact that a copyrightable character or design has fallen into the public domain should not preclude protection under the trademark laws so long as it is shown to have acquired independent trademark significance, identifying in some way the source or sponsorship of the goods. *See*

*Wyatt Earp Enterprises v. Sackman, Inc.,* 157 F.Supp. 621 (S.D.N.Y.1958). Because the nature of the property right conferred by copyright is significantly different from that of trademark, trademark protection should be able to co-exist, and possibly to overlap, with copyright protection without posing preemption difficulties. As the Fifth Circuit persuasively reasoned in *Boston Professional Hockey Association, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.,* 510 F.2d 1004, 1014 (5th Cir.), *cert. denied,* 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975):

> A trademark is a property right which is acquired by use. *Trade-Mark Cases,* 100 U.S. 82, 25 L.Ed. 550 (1879). It differs substantially from a copyright, in both its legal genesis and its scope of federal protection. The legal cornerstone for the protection of copyrights is Article I, section 8, clause 8 of the Constitution. In the case of a copyright, an individual creates a unique design and, because the Constitutional fathers saw fit to encourage creativity, he can secure a copyright for his creation for a [limited period of time]. After the expiration of the copyright, his creation becomes part of the public domain. In the case of a trademark, however, the process is reversed. An individual selects a word or design that might otherwise be in the public domain to represent his business or product. If that word or design comes to symbolize his product or business in the public mind, the individual acquires a property right in the mark. The acquisition of such a right through use represents the passage of a word or design out of the public domain into the protective ambits of trademark law. Under the provisions of the Lanham Act, the owner of a mark acquires a protectable [sic] property interest in his mark through registration and use.

■ Dual protection under copyright and trademark laws is particularly appropriate for graphic representations of characters. A character deemed an artistic creation deserving copyright protection, *see*

*Walt Disney Productions v. Air Pirates,* 581 F.2d 751 (9th Cir. 1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979), may also serve to identify the creator, thus meriting protection under theories of trademark or unfair competition, *see Edgar Rice Burroughs, Inc. v. Manns Theaters,* 195 U.S.P.Q. 159 (C.D.Cal.1976); *Patten v. Superior Talking Pictures,* 8 F.Supp. 196 (S.D.N.Y.1934); *see generally* Waldheim, *Characters—May They Be Kidnapped?* 55 T.M.R. 1022 (1965). Indeed, because of their special value in distinguishing goods and services, names and pictorial representations of characters are often registered as trademarks under the Lanham Act. 5 U.S.C. §§ 1052 & 1053; *see* Brylawski, *Protection of Characters—Sam Spade Revisited,* 22 Bull.Soc.Cr. 77 (1974); Adams, *Superman, Mickey Mouse and Gerentology,* 64 T.M.R. 183 (1974).[3]

■ Plaintiff correctly admits that, under *G. Ricordi v. Haendler,* 194 F.2d 914 (2d Cir. 1952) (L. Hand, J.), defendant is entitled to reproduce the contents of the seven public domain works as they were originally published. But as Judge Hand also acknowledged in *G. Ricordi,* the reproduction of a public domain work may result in unfair competition if the party goes beyond mere copying. The defendant in *G. Ricordi* had made an exact photographic reproduction of the book in question. Here, defendant assembled a new book consisting of multiple stories, and embellished the cover and interior with plaintiff's character illustrations in a way in which those illustrations were never used in the public domain books. If any of these illustrations, including the "sitting rabbit" design, has come to identify Warne publications, defendant's use of it may lead the public to believe that defendant's different, and allegedly inferior, publication has been published by or is somehow associated with plaintiff. This kind of danger of misrepresentation as to the source of copied public domain material

may establish a claim for unfair competition. *See Desclee & Cie, S. A. v. Nemmers,* 190 F.Supp. 381, 390 (E.D.Wis.1961).

Defendant argues, however, that it has the right to copy the covers as well as the contents of the original books. Relying on *Triangle Publications, Inc. v. Knight-Ridder Newspapers, Inc.,* 445 F.Supp. 875 (S.D.Fla. 1978), and *Nimmer on Copyright,* defendant contends that a book cover should be deemed a copyrightable component of the copyrighted book. Once copyright protection ends, it contends, the entire book should be free to copy.

■ In principle, defendant seems correct. Covers of books as well as their contents may be entitled to copyright protection. But defendant exaggerates the significance of its logic. None of the authorities it relies upon suggests that trademark and copyright protection are mutually exclusive or that the fate of a book cover is necessarily wedded to the fate of the underlying work. Professor Nimmer suggests only that, where a cover is sufficiently original to merit copyright protection, the copyright applicable to the underlying work should *extend* to the cover. Thus, for example, a separate copyright registration should be unnecessary for the cover of a periodical. M. Nimmer, 1 *Nimmer on Copyright* § 2.04[D], at 2–50. In *Triangle Publications,* the purpose of finding copyrightability of a cover was similarly limited. There, plaintiff sought to enjoin defendant from copying the cover of its magazine for use in an advertisement designed to distinguish defendant's magazine from the plaintiff's. The court held that the cover fell within the purview of the copyright laws and that the "fair use" exception of copyright protection, now codified in 17 U.S.C. § 107, should therefore apply to permit defendant's comparative advertising use.

■ Furthermore, the rule urged by defendant—that copyrightable book covers

---

**3.** Some commentators have suggested that trademark and unfair competition theories might serve to protect a character beyond the term of copyright applicable to the underlying work. This provocative question need not be

reached, since plaintiff does not seek to establish exclusive trademark rights in the characters themselves but only to protect its limited right to use specific illustrations of those characters.

may not obtain trademark or unfair competition protection—would permit incongruous results: a book cover lacking sufficient originality to warrant copyright protection could be protected for a potentially unlimited duration under the trademark laws, while covers revealing great artistry or ingenuity would be limited to the duration of the copyright. The better rule would protect all book covers according to the same standards that govern traditional trade dress or packaging cases. *See Sub-Contractors Register, Inc. v. McGovern's Contractors & Builders Manual, Inc.,* 69 F.Supp. 507, 511 (S.D.N.Y.1946), *citing with approval, E. P. Dutton & Co. v. Cupples,* 117 App.Div. 172, 102 N.Y.S. 309 (1st Dept. 1907). Thus, the proper factual inquiry in this case is not whether the cover illustrations were once copyrightable and have fallen into the public domain, but whether they have acquired secondary meaning, identifying Warne as the publisher or sponsor of goods bearing those illustrations, and if so, whether defendant's use of these illustrations in "packaging" or "dressing" its editions is likely to cause confusion. Summary judgment is an inappropriate vehicle for determining these questions.

■ Defendant's "fair use" defense based on Section 33(b)(4) of the Lanham Act, 15 U.S.C. § 1115(b)(4), is also unpersuasive.[4] First, as defendant admits, whether a party is making "fair use" of another's trademark is generally a question of fact, precluding summary judgment. *See Laura Secord Candy Shops Ltd. v. Barton's Candy Corp.,* 368 F.Supp. 851 (N.D.Ill.1973). Second, it is not at all clear that fair use analysis is applicable to the facts at bar. The fair use doctrine is typically invoked in comparative advertising cases where use of another's mark is necessary to describe truthfully a characteristic of the defendant's product. *See Societe Comptoir De L'Industrie Cotonniere Establissements Boussac v. Alexander's Department Stores, Inc.,* 299 F.2d 33 (2d Cir. 1962); *Herbert*

*Products, Inc. v. S & H Industries, Inc.,* 200 U.S.P.Q. 247 (E.D.N.Y.1977). Certainly, it cannot be said that defendant is using the illustrations for comparative advertising as that concept is generally understood. Nor is it clear that defendant's use of these illustrations is necessary to the full and effective exploitation of the public domain works. Defendant twice changed the cover of its Peter Rabbit book, suggesting that the "sitting rabbit"—which has been abandoned—was never necessary for its cover. With respect to the seven original cover illustrations, the fact that other publishers have reproduced Miss Potter's stories without copying the covers suggests they may not be crucial to the successful exploitation of the works. And, contrary to what defendant contends, the cover illustrations are not analogous to titles of public domain works, which, Professor Nimmer suggests, may be essential to effective distribution of the works. 1 *Nimmer on Copyright* § 2.16. A title is generally the primary identifier of a literary work; the cover illustrations are not. Of course, as noted at the outset, if the illustrations merely identify Miss Potter and her works, plaintiff will have no claim to trademark protection. If, however, plaintiff can establish a specialized secondary meaning—that the illustrations represent Warne's goodwill and reputation as the source of children's books and other products—it will have a protectible trademark interest, except to the extent that the covers contain material necessary to identify the book itself. Resolution of these questions must await trial.

■ The foregoing should not be construed to suggest that plaintiff will have an easy task at trial. Because the claimed marks are derived from or are similar in appearance to the illustrations in the text of the books, they may well prove to be "weak" marks. As a general rule, weak or descriptive marks are accorded less protection than inherently distinctive marks. *See*

---

4. Section 33(b)(4) provides a defense to a charge of infringement if the use is "otherwise than as a trade or service mark . . . of a term or device which is descriptive of and used

fairly and in good faith only to describe to users the goods or services of such party, or their geographic origin." 15 U.S.C. § 1115(b)(4).

*generally* McCarthy, *supra*, § 11.24. Plaintiff must, however, be given an opportunity to meet this relatively greater burden by producing evidence of consumer recognition and likelihood of confusion with respect to each of the marks in dispute.[5]

The motions for summary judgment are denied. The parties will complete discovery within ninety days of this order, at which time the case will be set down for trial.

SO ORDERED.

---

**5.** As noted at the outset, plaintiff contends that defendant's use of its cover illustrations violates the New York anti-dilution statute. General Business Law § 368–d. Although it may be that a cause of action for dilution of a trademark is governed by somewhat more lenient standards than those provided by the Lanham Act, *see Montellito v. Nina of California, Inc.,* 335 F.Supp. 1288, 1296 (S.D.N.Y. 1972), *citing Renofab Process Corp. v. Renotex Corp.,* 158 N.Y.S.2d 70, 77 (N.Y.Sup.1956), plaintiff is not entitled to summary judgment on this theory. The dilution doctrine embodied in Section 368–d presupposes the existence of a strong, well-recognized mark, which would merit protection even in the absence of likelihood of confusion. *See* McCarthy, *supra,* § 24:13. Plaintiff has yet to establish it has valid trademark rights in the character illustrations in question. Moreover, the applicability of Section 368–d to similar, competitive products like the books here in issue is doubtful. *See Ives Laboratories, Inc. v. Darby Drug Co., Inc.,* 455 F.Supp. 939 (E.D.N.Y.1978); *see generally* McCarthy, *supra,* §§ 24:13, 24:15.